JOHN KINNAN ET AL., APPELLANTS, v. J. N. FRANCE ET AL., APPELLEES.

FILED FEBRUARY 17, 1925.  No. 24438.

Waters: IRRIGATION DISTRICT: FORMATION: REFUSAL TO APPROVE. This proceeding was taken by petitioner under chapter 26 (sec-

tions 2857-2995) Comp. St. 1922, for the purpose of procuring a decree validating the proceedings under which petitioner was organized as an irrigation district, and validating and approving an issue of bonds voted by petitioner. A synopsis of the record is set out in the opinion, and it is *held* that a feasible plan of irrigation is not presented, and, therefore, the trial court did not err in refusing to approve and validate the issue of bonds.

APPEAL from the district court for Dawson county: GEORGE C. GILLAN, JUDGE. *Affirmed.*

*Beeler, Crosby & Baskins,* for appellants.

*Halligan, Beatty & Halligan* and *R. W. Devoe, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD and THOMPSON, JJ.

PER CURIAM.

The Gothenburg South Side Irrigation District, organized and existing under the provisions of chapter 26 (sections 2857-2995), Comp. St. 1922, instituted this proceeding in the district court for Dawson county for the purpose of procuring a decree validating and confirming proceedings theretofore taken by the petitioner, including its proposed issue of bonds in the sum of $408,000. Petitioner was organized for the purpose of bringing the lands within the boundaries of the district under irrigation, and the proceeds of the bonds were to be applied on the purchase of certain water rights and in paying for the construction and maintenance of irrigation works to carry out the purposes of the organization of the district.

This is a special proceeding based upon the provisions of chapter 26, Comp. St. 1922, which, among other things, vests the court with jurisdiction "to examine and determine the legality and validity of, and approve and confirm, or disapprove and disaffirm, each and all of the proceedings for the organization of said district under the provisions of this chapter from and including the petition for the organization of the district, and all other proceedings

which may affect the legality or validity of said bonds and the order of the sale and the sale thereof." Section 2919. That the necessary steps for the organization of the district were taken is either admitted or fully established. That a majority of those voting on the issue of bonds voted in favor of their issuance is also admitted, but it was contended by those objecting to such issue that certain parties who had voted in the affirmative were not duly qualified to vote upon that issue. As to some of the parties whose eligibility to vote was challenged, the court found in favor of the district, and, as to certain other parties, found in favor of the objectors; but, after having sustained objections to certain persons who had voted, the court found that the illegal votes cast did not change the result, and that a majority of those legally entitled to vote, and exercising the privilege, voted in favor of the issuance of the bonds, and that the illegal votes cast did not change the result of the election. The court found generally for the objectors and against the petitioner, and specially, that the purpose of the organization of the district was to purchase the canal, works, rights and franchises of a former irrigation district, known as "The Gothenburg South Side Irrigation Company," which included its water appropriation of 357.14 cubic feet per second of time, with priority dated September 26, 1894, and to build a canal to carry the water to be obtained from and under said alleged water right; that the bonds were voted for "the purpose of purchasing the works of the Gothenburg South Side Irrigation Company, including its canal, franchises, water appropriation, and property, and constructing a canal which should carry the water obtained by, through and under said appropriation to the lands included in said irrigation district;" and that it had been represented to the electors, "at and before said election, that said water right was a valid water right, and had a priority dated September 26, 1894, and was for 357.14 cubic feet per second of time." It was further found that the electors, in casting their ballots, believed

that the water right heretofore mentioned was a valid and subsisting right for the amount of water specified, and as of the date given, and that many of the electors would not have voted in favor of the bond issue had they known that the water right had been abandoned and that no right could be acquired thereunder. The court specifically found: "That at the time said district was organized and at the time said bond election when said bonds were voted was held, said water right was dead, and of no force and effect, and said canal and water right had been abandoned for many years prior to said election." And the court made the further finding that there is no unappropriated water in the river, except flood water, and, because of the facts found, refused to validate the issue of bonds proposed.

The district has prosecuted an appeal from so much of the decree as refused to validate the issue of bonds, and the objectors have prosecuted a cross-appeal from the finding of the court that a majority of those entitled to vote had voted in favor of the issuance of the bonds.

Section 2869, Comp. St. 1922, in dealing with the issuance of bonds, among other things, provides: "For the purpose of ascertaining the cost of any such construction work, the board shall cause such surveys, examinations and plans to be made as shall demonstrate the practicability of such plan."

On the hearing before the trial court, the main controversy seems to have been the validity of the water right, or claim to an appropriation of water originally made in 1894 by the Gothenburg South Side Irrigation Company, on which petitioner held an option to purchase. It is stipulated that there is no unappropriated water in the river, except flood water, and it is a matter of common knowledge that the flood water would not supply the needs of irrigators in the district.

If we understand the attitude of the parties, it may be said to be conceded that, unless the water appropriation of the now defunct Gothenburg South Side Irrigation Company, which petitioner purposes to purchase, is valid and

water may be appropriated from the Platte river under that appropriation, there is not before the court a feasible plan of irrigation and the bonds should not be validated. On the other hand, if the appropriation mentioned is, or may become, available to petitioner (laying aside for the present the questions raised by appellees' cross-appeal), the court erred in refusing to enter a decree validating the bonds, as prayed by petitioner.

It is claimed by the petitioner that this ancient appropriation is valid. By the objectors it is said to be invalid, and that subsequent appropriators have the first call upon the waters of the river. We think this case may be determined solely with reference to this issue.

There is little, if any, conflict in the evidence. It is taken mainly from official records or presented by stipulation. The right to appropriate water from the river, upon which right petitioner has an option of purchase, arises by virtue of certain filings made in compliance with the statute, then in force, by the Gothenburg South Side Irrigation Company in 1894. Under the proceedings then had, that company claimed the right to appropriate 357.14 cubic feet of water per second. Following its application for water, the company constructed a headgate and 12 or 15 miles of ditch. But no work was done toward the construction or completion of the canal after 1894, and no water has been run in the ditch since 1902. The headgate was washed out during the season of 1902 and has never since been repaired or replaced. In 1901 one of the bridges across the ditch was taken out and the ditch filled in to make a roadway across the ditch. This practice continued throughout the years of 1902 and 1903, when substantially all the bridges had been removed and the ditches filled with dirt. In 1902 the farmers through whose land the ditch ran began to fill in the ditch and to plant the ground to crops and, ever since that time, the land has been used and occupied by the respective owners of the adjacent banks. No meeting of the board of directors of the old company was held after 1902. In December, 1900,

the irrigation company filed an application with the board vested with the administration of the irrigation statutes for an extension of time in which to complete the works. On this application an extension of time was granted to September, 1902. Nothing further appears to have been done by the irrigation company. In 1905, in the district court for Dawson county, in an action wherein certain creditors of the irrigation company were plaintiffs and the irrigation company was defendant, the company was declared insolvent and a receiver was appointed to take over its property of every kind and character. The receiver thus appointed sold the property of the company, including its right to appropriate water, if any right it had, and its interest, if any it had, in the canal and right of way. The purchaser at that sale subsequently conveyed whatever interest he acquired to one Hinckley, who has since agreed to sell and convey to the petitioner in this action. Subsequent to the sale of the property by the receiver, nothing further was done by any person in connection with the irrigation project until 1914, when the purchaser at the receiver's sale wrote the state engineer, who was then the officer charged with the duty of administering the irrigation law, requesting information as to the probable cost of procuring a new water right, and stating, "We do not expect to be able to get water only in the fall and spring." Here the matter was permitted to rest until 1922, when the department of public works, acting under the provisions of section 8428, Comp. St. 1922, instituted proceedings to determine whether or not the water right now before us should be canceled. Notice was given, as by statute provided, and at the appointed time, on request of some of the interested parties, hearing was continued to January 18, 1923. At the adjourned meeting, an attorney representing some of the landowners within the district asked that the hearing be continued, and that the landowners be given a period of 90 days within which they might be permitted to show to the department that they had acquired the water right then

under investigation, together with the ditches, etc. In compliance with this request, an order was made giving such landowners 60 days from February 1, 1923, to complete the formation of an irrigation district, and an additional period of 6 weeks within which to go through the necessary proceedings to organize a district and vote bonds. It was also ordered that, should a district be organized and bonds voted, the time for completing the works would be determined at a subsequent hearing, but, should the landowners fail to organize an irrigation district, or should the district, if organized, fail to provide funds sufficient to complete the works, the water appropriation would then be declared canceled.

The proceedings heretofore outlined, covering the organization of the new district and the adoption of a proposition to issue the bonds now before the court, were then had, with the results already noted, and, on March 26, 1924, the department of public works dismissed "the cancelation proceedings" and directed that the work should be carried on as provided in section 8432, Comp. St. 1922; that the time for completing the work of construction should be extended to July 1, 1925, and the time for applying the water to a beneficial use should be extended to April 1, 1926. Defendants contend that this order is final and concludes the petitioner herein.

In determining the validity of the claim to the prior right to appropriate the waters of the Platte river under the proceedings had in 1894, it may be here remarked that we have not been furnished with proof of any final adjudication, entered at any time, by the department authorized to administer the irrigation laws of the state, wherein or whereby such right was confirmed either in the original irrigation company or in the petitioner. But this is only one of the defects in petitioner's claim to a valid appropriation of water. If it be conceded that the original irrigation company acquired the right to an appropriation, and that for a time it exercised the right by applying the water to

a beneficial use, still its subsequent conduct was such as to call the present validity of that right in question. It never completed its works according to the original plans, and for approximately 20 years it did not use its system of irrigation. It permitted, without protest or warning, others to construct irrigation systems and to apply for, and receive, permits to take water from the river and apply it to their lands.

Our statute on irrigation is substantially the same as that of California and other western states, and, without stopping to collate these statutes or the construction placed upon them by the various courts, it may be said that the general, if not the universal, policy of the states is to deny to one who has made an application for an appropriation from a stream, the right to retain indefinitely the first call upon the waters of the stream, while failing to apply the same to a beneficial use. It appears that the original appropriator abandoned any right it had under its application for a period far in excess of the time fixed by statute to constitute abandonment, and during this period the rights of other appropriators seem to have accrued. Whether we deal with this subject under the term of abandonment, or of nonuser, seems to be immaterial, under the facts presented, for there was no beneficial use made of the water during the long term of years when others, more diligent, erected their wor :s and made a beneficial use of the water to their lands. For cases somewhat in point see *Kersenbrock v. Boyes,* 95 Neb. 407; *Farmers Canal Co. v. Frank,* 72 Neb. 136; *Smith v. Hawkins,* 110 Cal. 122.

But it is claimed by the petitioner that the action of the department of public works in dismissing the proceedings it had instituted for the cancelation of the claim is a final adjudication binding all parties to this suit. This is beside the question. It is the duty of the court, under the statute, and this duty was recognized by petitioner itself in presenting its cause, to inquire into all the proceedings, and to

ascertain whether or not a feasible plan of irrigation is presented.

Without determining, for it is not necessary here to determine, the effect upon the parties to this proceeding of the order of the department of public works in dismissing its proceedings brought for the purpose of canceling the claim of the original company to an appropriation of water, we may say that the proceeding was not binding upon the appropriators who were not before the tribunal.

"The rights of a person who is not a party to a suit, nor in privity with a party, are not affected by the judgment rendered therein; as between him and a party to the action, their rights are to be determined as if the judgment had never been rendered." 34 C. J. 1043, sec. 1480.

The mere failure of the department of public works to carry to final judgment the proceedings it had instituted to cancel the original application for an appropriation could not affect the rights of parties who, during the many years when the Gothenburg South Side Irrigation Company was dead, or dormant, acquired rights in the flow of the stream.

It is apparent that the only source of water supply available to petitioner is that claimed under the proceedings had in 1894, and the subsequent acts thereunder. If this source of supply is not available, the work now proposed to be done by petitioner would be in vain, and those owning land within the district would find their property burdened with a debt in excess of $400,000 for an irrigation system that will be valueless because of the lack of a water supply. No doubt one of the purposes of the statute is to guard against such contingency.

The record fails to show that petitioners presented a feasible plan of irrigation, and therefore, the trial court was warranted in refusing to validate the bonds presented. The judgment is

AFFIRMED.