GRAHAM ICE CREAM COMPANY, APPELLANT, V. GEORGE PETROS ET AL., APPELLEES.

FILED MAY 22, 1934. No. 28652.

*Hotz & Hotz,* for appellant.

*Ziegler & Dunn, contra.*

Heard before Good and Eberly, JJ., and Messmore, Raper and Yeager, District Judges.

Messmore, District Judge.

This is an appeal from the district court for Douglas county wherein that court found for the defendants below, appellees herein.

The petition of plaintiff, appellant herein, alleges that on November 30, 1927, the district court for Douglas county entered a judgment in favor of plaintiff against George Petros, one of the appellees herein, which judgment, with interest, on October 6, 1931, the date of filing said petition in said court, amounted to $4,221.18; alleges that an execution had been issued repeatedly on said judgment and returned unsatisfied, and that the said George Petros

claims to have no property of any nature or kind upon which levy may be made for the satisfaction of said judgment; alleges that plaintiff has exhausted all its legal remedies and there exists no speedy and adequate remedy at law open to it for the satisfaction of said judgment; alleges that appellee, George Petros, in order to hinder and delay the collection of said judgment against him, formed a corporation known as the "Ambassador Café" under the laws of Nebraska in July, 1931, and that defendants placed all the capital stock of said corporation in the name of Andrew Petros, so that on the face of the records of said corporation the said Andrew Petros appears to own said café and the said George Petros appears merely as an employee therein at a salary of $50 a week; that the said George Petros devotes his sole and exclusive time to the management and operation of said café, signs all the checks as president and upon whose signature alone the bank transacts business with said corporation, receives and receipts for all property of the corporation, hires and discharges all help, and otherwise runs and operates said business as his own, because in truth and in fact it is his own, and the name of Andrew Petros is supplied by the said George Petros merely as a hindrance set up by the said George Petros to prevent plaintiff from collecting its judgment against the stock of said café, all of which is owned by the said George Petros, and the said Andrew Petros has unlawfully and illegally permitted his name to be used for the purpose of aiding and abetting the said George Petros in fraudulently preventing the collection of said judgment; further alleges that, while certain payments might have been made by said café to the said Andrew Petros, these were repayments for money loaned to George Petros and not to said café, and that all of such moneys have been paid out of the assets of said café under the direction and supervision of the said George Petros, with the result that the said Andrew Petros has no right, title or interest in said business nor in the capital stock thereof.

Plaintiff prays that the court enter a decree vacating and setting aside the stock of said Ambassador Café in the name of Andrew Petros and transferring same to George Petros, and that the latter be decreed to be the rightful owner thereof, rather than the said Andrew Petros, and that plaintiff have the proper decree enabling it to make proper levy for the satisfaction of its judgment against the said George Petros and all of the capital stock of said café and against the said Andrew Petros personally in the event he fails, neglects or refuses to make transfer or otherwise abide by the decree of the court.

To this petition the appellees George Petros and the Ambassador Café filed their answer which, for the purpose of this opinion, may be briefly stated as follows: Admit that plaintiff obtained a judgment against George Petros; that an execution has been issued on said judgment and returned unsatisfied; deny each and every other allegation in said petition; admit that George Petros devotes his time to said Ambassador Café and acts as general manager in operating its business; admits his relationship to Andrew Petros as a brother.

To the petition Andrew Petros, appellee, has filed his amended answer in which he renews his objections to the jurisdiction of the court under a special appearance, wherein the ruling was adverse to him, alleging as his principal grounds in said objections to jurisdiction that the proceeding in attachment and garnishment and service on him by publication were without force and effect, for the reason that no sufficient affidavit of plaintiff, as required by law, was filed before the issuance of the order of attachment, and that the affidavit filed by plaintiff for said order of attachment was insufficient to authorize the issuance of such writ, in that plaintiff did not set forth or allege that the said Andrew Petros was indebted to plaintiff in any sum whatever or that plaintiff was entitled to recover any amount against him, and failed to set forth any statutory ground authorizing the issuance of the order of attachment against him, and for the reasons above set out there

was no basis upon which service by publication could be obtained against him; alleges that he is not informed of the judgment obtained by plaintiff against the said George Petros; and denies each and every allegation contained in said petition; also alleges the statement of facts upon which he contends for the defense of estoppel.

To the answers of defendants, plaintiff replied, denying the allegations of the respective answers, denying the existence of the defense of estoppel, and alleging that all of the defendants are estopped to deny the ownership of the Ambassador Café, unincorporated, and the capital stock of the incorporated company as being anything but the property of the said George Petros, and alleging other facts which plaintiff claims constitute an estoppel.

The bill of exceptions contains a great amount of documentary evidence, and details an explanation of the business of the Ambassador Café, which, for the purposes of this opinion, may be summarized as follows: George Petros was engaged in managing the Valley of Sweets in the Henshaw Hotel in Omaha in the years 1920 and 1921, during which time the ice cream for which judgment was obtained against him on November 30, 1927, was sold him by appellant. Subsequent to that time he went to Chicago for a year or so, then returned to Omaha, working in different cafés, one of them owned by a cousin, Louis Petros, up to about the time of the opening of the Ambassador Café. Just before this a conference was held by Louis Petros, George Petros, and Andrew Petros, his brother, wherein it was agreed that Andrew Petros, a resident of Chicago and a practicing dentist, and also in control of other businesses there, was to advance about $800, and that he had advanced about $1,700 on the 26th of October, 1929, when the café was opened and while it was yet unincorporated. From the time of the opening of the café George Petros did its banking business with the South Omaha State Bank for about a year or so, then transferred the account to the Union State Bank until it closed, then transacted business with the First National Bank,

and later returned to the Union State Bank. The café was incorporated for $25,000; George Petros taking no part in the incorporation. The evidence does not clearly disclose that in June, 1931, when the stock was issued, Andrew Petros then made any direct payment, except his general testimony that he at different times had put several amounts into the café business. The books of the café are not very clear in reference to the forepart of the time the business was transacted, but subsequent to that time and by way of explanation Miss R. Hardtmayer, bookkeeper of the corporation, gave a fairly accurate history of exhibits 16, 17, and 18, known as check registers, for the reason that all the business of the café was transacted by checks, according to her testimony. The withdrawals credited to Andrew Petros are not clearly shown, with the exception of the testimony of the bookkeeper that he at different times received checks. There is no indication of the return of the checks except as reflected in part by the books. Other documentary evidence would indicate that Andrew Petros had no authority by the use of his own signature to draw any amount from the bank against the café's account, there being no register card with his signature thereon with the Union State Bank at that time. Other documentary evidence discloses the signing of the contracts for the purchase of supplies and equipment for the café in the sole name of George Petros. Other contracts were signed "Andrew Petros, by George Petros." According to the testimony of the bookkeeper the figures developed in appellant's brief regarding the gross income of the café and as shown by the check registers would indicate that such figures were fairly accurate. Balanced against this gross income as reflected by exhibits 16, 17, and 18, the amount over and above expenses is fairly reflected in the brief of appellant. The record could have been more clear by following through the withdrawals of Andrew Petros, which would lead one to believe from an examination of the record that checks between Andrew Petros and George Petros went back and forth with equal

regularity in some form to indicate always a large balance in the bank account, following a practice commonly known as the "kiting" of checks.

There is other evidence, such as that of Andrew Petros' investment account and his personal account, together with one $1,200 check, dated June 10, 1931, and one $1,250 check, dated June 2, 1931, and other exhibits to show how they were signed, also exhibit 22, a photostatic copy of a lease of fixtures used for the purpose of furnishing ice cream to the Ambassador Café by appellant, and over which there developed some considerable controversy in the record, wherein appellant claims that it did furnish the ice cream and fixtures upon a cash basis and that George Petros paid for such ice cream on a cash basis, as suggested by it. The discussion between appellant and George Petros in the record shows the manner in which the lease and agreement were signed, but the exhibit itself shows it was signed "Andrew Petros, by George Petros," although it is claimed that the exhibit was not the original agreement in so far as the signatures of the parties thereto were concerned, but that the signature was substituted by George Petros. A careful analysis of the facts surrounding the making of the contract, George Petros' view of the conversation and Mr. Graham's view of the conversation fall far short of establishing the defense of estoppel as set forth in the pleadings of appellee, George Petros.

When confronted with the statement of the surplus over and above the expenditures of all and every kind, the explanation of George Petros was that he sent money to relatives in Greece to the extent of about $1,800 or $2,000. This still left a balance that was unaccounted for by any of the exhibits or any of the acts of explanations contained in the record, but two things could have occurred to this balance, either that there was still a credit to the Ambassador Café or it had gone into the account of the owner of the café, Andrew Petros. As indicated above, the withdrawals of Andrew Petros and the establishment

and payment to the account of Andrew Petros of earnings from the café are not clarified by the evidence. This may be due to counsel's failure to properly clear up this matter in the record.

Another corporation was formed known as the "Aksarben Ice Cream Company" with its location directly across the street from the Ambassador Café. It was organized by Andrew Petros, but George Petros had a working interest in it for a while as president. This corporation was a company in competition with appellant company, which had been furnishing ice cream to the Ambassador Café.

Relative to the special appearance objecting to the jurisdiction of the court filed by appellee Andrew Petros and overruled by the trial court, we are not favored in the record with the affidavit required by law nor the order of attachment, and therefore we are unable to pass upon the objections raised by said appellee relative to the jurisdictional questions involved; neither are we favored by any citations by said appellee setting forth any other reasons for objecting to the court's jurisdiction. There might have been some merit to the contention of said appellee on the special appearance had he pursued the same so that this court might have had the opportunity to pass on the question, but in the absence of perfecting the record in this regard we must conclude that said appellee did not consider the question of enough importance to bring it to this court's attention.

In reference to the question of estoppel raised by the amended answer of appellee Andrew Petros and as raised in the reply of appellant thereto, we are convinced by the legal definition of estoppel and by the fundamental conception of the doctrine of estoppel that it does not apply in this case.

Estoppel means "the preclusion of a person from asserting a fact, by previous conduct inconsistent therewith, on his own part or the part of those under whom he claims, or by an adjudication upon his rights which he cannot be allowed to call in question." Bouvier's Law Dictionary.

The evidence clearly shows that it was not within the confines of the definition of estoppel. No person concerned in this transaction was precluded in any way or manner by his previous acts. It is essential to the validity of the claim of estoppel that the person sought to be estopped must have conducted himself with the intention of influencing the conduct of another, or with reason to believe his conduct would be to influence the other's conduct, inconsistently with the evidence he proposes to give. *Burke v. Utah Nat. Bank of Ogden*, 47 Neb. 247; *Rea v. Pierson*, 114 Neb. 173.

This brings us to the remaining question in the case: Is the Ambassador Café and the capital stock thereof the property of George Petros and held in the name of Andrew Petros, and should such property be subjected to the payment of the judgment rendered in favor of appellant, and should the stock of said corporation, the Ambassador Café, be transferred and set over in the name of George Petros to permit a recovery by appellant under said judgment?

There are many discrepancies in the record regarding the transaction of the business of the café. There is no doubt but that George Petros transacted the entire and exclusive business of the café. This brings us to the question whether such acts, together with all the evidence, prove ownership in George Petros. Appellant claims that the indicia of ownership are in George Petros. We find that the term "indicia of ownership" is synonymous with circumstantial evidence, denotes facts which give rise to inferences, rather than the inferences themselves; however numerous indicia may be, they only show a thing may be, not that it has been; constitute marks of identity.

Reference was made to contracts with the Omaha Fixture & Supply Company, which was signed October 7, 1929, by George Petros without reference to Andrew Petros, with the Central Typewriter Exchange, under date of February 24, 1930, signed by George Petros without reference to Andrew Petros, with the Orchard & Wilhelm Com-

pany, dated August 31, 1929, signed by George Petros without reference to Andrew Petros, and with the Hobart Manufacturing Company, dated December 2, 1929, signed by George Petros without reference to Andrew Petros. Other contracts were with the Rendla Supply Company, with the Nebraska Power Company, and with the Sterling Electric Company, which, as testified to by George Petros, were signed "Ambassador Café, Andrew Petros, by George Petros." Several of the contracts mentioned in the evidence and signed by George Petros were made and signed by him prior to the filing of the power of attorney offered and received in evidence.

By this power of attorney, filed in Douglas county with the county clerk on November 23, 1929, Andrew Petros granted to George Petros the authority to "manage, operate and control the Ambassador Café, located 2524 Farnam St., Omaha, Nebr., belonging to the said Dr. Andrew Petros, and he is hereby authorized to pay bills, collect moneys, to draw checks on the account of the said café in his own name, to employ help, pay rents, make leases, purchase supplies, to execute chattel mortgages, and to take full charge and control of any and all business arising out of and necessary to the operation and maintenance of the said Ambassador Café."

A power of attorney must be construed in accordance with the rules for the interpretation of written instruments generally. *Campbell v. Foster Home Ass'n,* 163 Pa. St. 609, 26 L. R. A. 117, 43 Am. St. Rep. 818. Where the intention of the parties appears from the language employed in the power of attorney, that intention should prevail, and a strained interpretation should never be given to defeat it. *Gratz v. Land & River Improvement Co.,* 82 Fed. 381; *Marr v. Given,* 23 Me. 55, 39 Am. Dec. 600; *Muth v. Goddard,* 28 Mont. 237, 98 Am. St. Rep. 553. The object of the parties must always be kept in view, and where the language will permit that conclusion must be carried out that will support instead of defeat the purpose of the instrument. Indeed, according to the estab-

lished rule, powers of attorney will be given a narrow and restricted construction, and will be held to grant only those powers which are expressly specified and such others as are essential to carry into effect the expressed powers. Every general power implies every particular power necessary to its exercise, or performance.

The validity of the power of attorney given in the instant case is not contradicted nor attacked except upon the theory that George Petros entered into the contracts heretofore mentioned by signing his name thereto without reference to Andrew Petros or the Ambassador Café. Under the power of attorney in question he would have the right to sign such contracts as he did without reference to Andrew Petros.

Appellant's charge of fraud, in so far as the same may be effective, pertains to the inaccuracies of the receipts as shown by the exhibits and the withdrawals in so far as appellee Andrew Petros is concerned, which alone are not satisfactorily explained, but which alone would not be sufficient to defeat the right of ownership in view of all the other evidence and circumstances in this case.

Appellant's conception of the indicia of ownership, as defined, fails to carry sufficient direct proof with it to prove the ownership of the property in question in George Petros. The evidence relative to the former transactions of appellant with George Petros and its demand that he pay cash for the products sold the Ambassador Café, together with the power of attorney, in the mind of the district judge overbalanced the evidence of appellant.

When an action in equity is appealed, it is the duty of this court to try the issues *de novo* and to reach an independent conclusion without reference to the findings of the district court. Comp. St. 1929, sec. 20-1925. But when the evidence on material issues so conflicts that it cannot be reconciled, "this court will consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." *Shafer v. Beatrice State Bank,*

99 Neb. 317. See *Greusel v. Payne,* 107 Neb. 84; *Jones v. Dooley,* 107 Neb. 162.

For the reasons stated in this opinion, we must conclude that the decree of the lower court under all the evidence in this case is correct and should be and is hereby

AFFIRMED.