STATE OF NEBRASKA, APPELLEE, v. VALDEMAR A. NIELSEN, APPELLANT, BERN R. COULTER, INTERVENER-APPELLEE.

79 N. W. 2d 721

Filed December 14, 1956. No. 34027.

*Paul Rhodes* and *Heaton & Heaton,* for appellant.

*Clarence S. Beck,* Attorney General, *Robert V. Hoagland,* and *Robert J. Bulger,* for appellee.

*Mothersead, Wright & Simmons,* for intervener-appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action brought by the State of Nebraska as plaintiff, against Valdemar A. Nielsen as defendant, in the district court for Morrill County. The purpose

374

of the action was to permanently enjoin the defendant from appropriating, diverting, or taking water from Pumpkinseed Creek for irrigation or any other purpose, and to permanently enjoin the defendant from interfering with or preventing the access of officers, agents, and employees of the Department of Roads and Irrigation to the dam, headgate, and irrigation works alleged to be owned by the defendant in the performance of their official duties. One Bern R. Coulter was granted leave to intervene in the action. The trial court found generally in favor of the plaintiff and the intervener and against the defendant, and permanently enjoined the defendant from interfering with or preventing the access of the employees of the Department of Roads and Irrigation to the dam, headgate, and irrigation works belonging to the defendant in the performance of their official duties, and from appropriating, diverting, or taking water from Pumpkinseed Creek for irrigation or any other purpose. The defendant filed a motion for new trial which was overruled. The defendant thereafter perfected his appeal to this court.

For convenience we will refer to the State of Nebraska as the State; the Department of Roads and Irrigation as the department; Valdemar A. Nielsen as defendant or Nielsen; Bern R. Coulter, intervener, as intervener; Pumpkinseed Creek, in some instances, as the creek; the State Department of Irrigation, Highways, and Drainage, as the State Board or State Board of Irrigation; and other names applied to state agencies shown by the record by the names used therein.

The record shows that Nielsen owns all of Section 30, Township 19 North, Range 52 West of the 6th P. M., in Morrill County, and other lands which he farms; that Justin S. Smith and Albert Langford were the record owners of part of Section 30 above described, subject to a mortgage; that they purchased this land in 1921, and Smith moved onto the land in 1921; and that thereafter the mortgage was foreclosed and the defendant acquired.

his present ownership of the land by virtue of foreclosure proceedings, the conveyance to the defendant being dated March 1, 1932, when he moved onto the land. He also acquired other parts of Section 30 by deed in 1939 from other parties. He has farmed the land at all times since moving upon it. Pumpkinseed Creek is a natural stream of the State which flows through defendant's land.

The intervener owns land adjoining Nielsen's land, that is, all of Section 29, Township 19 North, Range 52 West of the 6th P. M., in Morrill County immediately east of Nielsen's home section. He also owns land in Sections 18 and 19 to the north of the Nielsen land, and other lands. He completed the purchase of said lands in 1939. Pumpkinseed Creek runs across Section 29.

The record further discloses that on June 24, 1895, P. P. Waitman, also known as Price P. Waitman, made claim for an appropriation of irrigation water from Pumpkinseed Creek to water part of Section 30 and other lands in Township 19 North, Range 52. On July 14, 1896, hearing was had on this claim which resulted in approval of the claim on April 24, 1897, and identified as docket No. 847. This docket provided for irrigation on both the north and south sides of the creek, and two canals are shown on the plat accompanying the claim. This adjudication involved lands now owned by the defendant. The testimony of P. P. Waitman at the hearing was to the effect that he succeeded to the canal of Dick Brown. This canal is referred to in the record at times as the Dickie Brown canal which had carried water in 1887. Waitman's priority was dated March 12, 1891. On July 10, 1900, Price P. Waitman filed a petition for a permit to relocate the headgate shown in docket No. 847. This permission was granted July 14, 1900.

On October 11, 1923, the Department of Public Works commenced proceedings for the cancellation of docket No. 847, and set a hearing to be held in the courthouse

at North Platte at 9 a. m., November 20, 1923, to show cause why said appropriation should not be canceled in part or in whole, in accordance with section 8428, Comp. St. 1922. Notice of the hearing was sent by registered mail to the landowners as shown by the records of the county clerk of Morrill County. Notice was also published in the Bridgeport News-Blade in Morrill County. On November 20, 1923, hearing was had pursuant to said notice. No one appeared to protest the cancellation of the appropriation. The order of cancellation was dated December 31, 1923, and there have been no proceedings to reopen or set aside this order.

A field report dated September 26, 1923, shows the headgate of the Waitman canal in Section 30 to be practically useless; that there was no sign of a dam; that the canal had grown full of grass and weeds; and that there was nothing left of the old flume that crossed the creek.

At the time of the cancellation proceedings, Albert Langford was deceased. Justin S. Smith testified that the land was pasture and hay land, and some farm land; that there was a ditch on the north side of the creek which ran east from the Banner County line to the north line of Section 30, for probably half a mile; that there was also a ditch on the south side of the creek which ran from the northwest to the southeast; that both of these ditches were filled with grass and weeds; that there was an old flume on the north side of the ditch which had been washed out or torn down and was in no condition to carry water; and that he did no work on the ditches or flume, nor did he attempt to do any irrigating through those ditches while he occupied the land.

Smith's son-in-law testified that he worked on the land in 1926 and 1927, and harvested on the land in July of 1928, 1929, and 1930. He had been over all of the land and observed no irrigation work going on, nor irrigation water running.

Waitman's son testified that he had trapped on the creek near the old flume on the irrigation project from 1912 to 1914; and that at that time the flume was rotted down and not in condition to carry water.

The intervener testified that in the fall of 1939, he and Nielsen drove up near the northwest corner of Section 30 to look at the old dam and the ditches to ascertain what the possibilities were of repairing the irrigation works and taking water from the creek. They discussed repairing some of the irrigation works, and in the fall of 1939 started to construct a wooden dam across the creek on the west side of Section 30, which was completed in 1940. The flume was located in the same place as the old flume. The fills on both sides of the creek were used. The west fill was concreted. After the work was completed, the intervener used both sides of the creek for irrigation purposes and has continued to do so since 1940. The intervener testified further that he talked to Nielsen about the time he made his first application for appropriation of water, with reference to joint irrigation works, and explained that he had talked to the chief of the Bureau of Irrigation and Drainage and was told that they could not proceed or continue to run the water without first obtaining an appropriation for the same. He asked Nielsen to go in with him and make a joint application for the appropriation of water for all of their lands on the north side of the creek. Nielsen said he was not interested at all; that he was not going to make any application for appropriation; that the creek ran through his land and he had the right to use whatever he wanted to; and that he was not going to ask the State when he could use the water.

The intervener further testified that he had expended a total of $4,230.70 since 1941 in connection with the irrigation works in Section 29 on both sides of Pumpkinseed Creek. He did not know that Nielsen claimed any rights under the Waitman appropriation until Nielsen filed his amended answer setting up such rights.

The intervener and Nielsen used the wooden dam which they had built up until 1947. It was in bad shape and had to be repaired every time it was used. Later Nielsen and his son built a concrete dam a little farther up the creek and used the same canal to divert water. At that time the intervener was using a concrete dam also. The intervener holds appropriations for water from Pumpkinseed Creek to use on his land in Section 29. He holds an appropriation from the State for water from Pumpkinseed Creek to irrigate land on the north side of the creek in Section 29, which was granted in June 1941. After he purchased the balance of the Waitman land in Section 29, he made application to the State for an appropriation for water to be used on the south side of the creek in Section 29, which was granted.

A hydrographer employed by the Bureau of Irrigation testified that he made an investigation of the Nielsen land in 1950. He talked to Nielsen on July 31, 1950, and Nielsen questioned him about taking boards out of the dam. Nielsen told him that the department had no authority to control the water running through his place for the reason that he did not have an application on file with the State, and that if he did have an application on file with the State, then there would be authority for the State to control the water running through his place. This witness did not get to the headgate because there was a sign posted warning employees of the Department of Roads and Irrigation to stay out unless they had the consent of the owner, and Nielsen denied him admittance.

A witness for the defendant testified that he was acquainted with the land owned by Nielsen; that his folks moved into that vicinity in 1895, and at that time he lived on the county line and was raised on Section 31, which is directly south of Nielsen's Section 30; that the Banner County line lies along the west edge of Section 30; that the school he attended was near the northeast corner of Section 25, perhaps 200 yards either

way from Section 25 in Banner County; and that while he was attending school in 1898, there was a dam where water was being diverted from Pumpkinseed Creek. The dam was in Banner County. He lived on the county line until he was 26 years of age, and discerned the boundary of the county line by location of a fence.

On October 9, 1950, after this suit was started, the defendant made claim, docket No. 1055, for an irrigation appropriation from Pumpkinseed Creek for his land under a Dick Brown canal priority of 1886 for parts of the north half and southeast quarter of Section 30, and other lands. The plat showed lands lying south of Pumpkinseed Creek. Objections were filed, and a hearing had resulting in an order denying the claim. The order was dated October 1, 1951. No appeal was taken from this order.

The defendant filed application No. 6811 on November 15, 1954, for appropriation of water from Pumpkinseed Creek for irrigation of his lands with the department, requesting the right to irrigate lands in all four corners of Section 30 on the south side of Pumpkinseed Creek. This application was approved January 31, 1955. In this connection, the defendant filed a plat showing the location of the lands sought to be irrigated. Comparing the plat filed with docket No. 1055 and this plat, the identity of the canals and the lands lying north of the canal and south of the creek in both appropriation applications are the same, with the exception that application No. 6811 includes additional lands south and above the canal, the reason being that there is a pump to be used under this appropriation. These plats show that no part of the southeast quarter of Section 30 lies north of Pumpkinseed Creek, therefore the allowance of water in docket No. 847 for lands in the southeast quarter was for lands south of the creek and identical with lands in application No. 6811.

The defendant contends that the Department of Roads and Irrigation has exclusive jurisdiction over all matters

pertaining to the granting or cancellation of water rights in this state as provided for in section 46-209, R. R. S. 1943.

Section 46-208, R. R. S. 1943, provides: "The Department of Roads and Irrigation shall exercise the powers and perform the duties formerly assigned to the state board of irrigation, highways and drainage."

Section 46-226, R. R. S. 1943, provides: "The Department of Roads and Irrigation shall make proper arrangements for the determination of priorities of right to use the public waters of the state, and determine the same. The method of determining the priority and amount of appropriation shall be fixed by the department."

The defendant makes reference to sections 46-227 to 46-232, R. R. S. 1943, as setting forth matters pertaining to adjudication of water rights, and to sections 46-229.03 to 46-229.05, R. R. S. 1943, as setting forth the procedure for the department to cancel an appropriation. In addition, we deem the following sections of the statute important in determining this appeal.

Section 46-229, R. R. S. 1943, provides: "All appropriations for water must be for some beneficial or useful purpose, and when the appropriator or his successor in interest ceases to use it for such purpose the right ceases."

Section 46-229.02, R. R. S. 1943, provides: "If it shall appear that any water appropriation has not been used for some beneficial or useful purpose, or having been so used at one time has ceased to be used for such purpose for more than three years, the department shall appoint a place and time of hearing, and shall serve notice upon the owners of such water appropriation or such ditch, canal or other diverting works to show cause by such time and at such place why the water appropriation owned by such person should not be declared forfeited and annulled, and shall also serve such

notice upon the landowners under such water appropriation, ditch or canal."

The procedure referred to in sections 46-229 to 46-229.05, R. R. S. 1943, has to do with cancellation of irrigation rights and is not exclusive. The courts of this state have recognized two methods of loss of irrigation rights independent of statutory procedure for cancellation by the department of such rights. These two methods may be classified as abandonment of water rights, or nonuser of such rights for the period of statutory limitations relating to real estate. This statute, section 25-202, R. R. S. 1943, provides in part: "An action for the recovery of the title or possession of lands, tenements or hereditaments, * * * can only be brought within ten years after the cause of action shall have accrued; * * *."

"Abandonment" is defined in State v. Oliver Bros., 119 Neb. 302, 228 N. W. 864, as follows: " ' "Abandonment" is the relinquishment of a right by the owner thereof, without any regard to future possession by himself or any other person, but with the intention to forsake or desert the right.' "

The defendant Nielsen claims rights under docket No. 847 as a successor in title to Justin S. Smith. Smith lived on the place in question and farmed it from 1921 until Nielsen took possession in 1932. During the period that Smith occupied the premises, he did no work on any of the irrigation works that had formerly been on the place. He did not irrigate the farm during that period which constituted 11 years. He received a notice of the cancellation proceedings affecting docket No. 847. He paid no attention to it and showed no interest in such proceedings. It is apparent from the evidence that Smith intended to abandon any irrigation rights existing under docket No. 847. There was a complete nonuser of the irrigation rights by Smith. Such abandonment is binding upon the defendant, since he claims title to the property and the water rights appurtenant to it under Smith and his co-owner Langford.

"Nonuser must be continued for a time equal to the statutory limitation upon actions to recover the possession of real property, in order to lose the right of appropriation." Farmers Canal Co. v. Frank, 72 Neb. 136, 100 N. W. 286.

A case in point, that cancellation proceedings as provided for by statute are not exclusive, is Kersenbrock v. Boyes, 95 Neb. 407, 145 N. W. 837. In this case Kersenbrock made application after the law of 1911 became effective to adjudicate rights he claimed he acquired under the 1895 law. Objections were filed to his application on the general ground, among others, that more than 10 years had elapsed and claimant, Kersenbrock, had failed to perfect his irrigation claim by development of the right. The State Board of Irrigation canceled both appropriations which was affirmed by the district court and this court. The statute providing for cancellation by the state board for 3 years nonuser went into effect on April 10, 1911. Kersenbrock asserted that his right could not be canceled except under this statute, and that he had 3 years after the effective date of the law in which to perfect his beneficial use of the water. This court said: "For a period of more than ten years before plaintiff was cited to appear before the state board, the dam was not in a condition to generate power for the beneficial uses of pumping water for irrigation or for running a grist-mill. The evidence shows clearly that plaintiff did not comply with statutory conditions or make a beneficial use of public water under either application. * * * Under any construction of the act, plaintiff did not have over ten years to comply with statutory conditions." See, also, Kinnan v. France, 113 Neb. 99, 202 N. W. 452.

In the instant case the evidence shows nonuser of irrigation rights for more than the statutory period of 10 years, which results in a clear loss of any right of appropriation under docket No. 847 independent of any

cancellation proceedings. The defendant's contention cannot be sustained.

The defendant contends that an order of cancellation of a water appropriation by the Department of Roads and Irrigation is void where the department fails to serve proper notice on the owners of an appropriation.

The defendant cites and quotes section 8428, Comp. St. 1922, which was in effect at the time of the issuance of notice given by the department and at the time of the hearing in North Platte in 1923. We make reference to the notice to be served as required by the statute. The statute requires that a notice shall be served upon the owners of such water appropriations, and the department shall also serve such notice upon the landowners under such water appropriations, ditch, or canal. In addition, such notice shall be served at least 30 days before the date of hearing upon those owning or controlling the water appropriation and the ditch, canal, or reservoir for the purpose of using or storing water for any purpose whatsoever, if they are known to the Department of Public Works to be the owners thereof and maintain an office within the State of Nebraska, and if they do not maintain an office within the State of Nebraska, then such notice shall be served by the publication thereof in some legal newspaper in the county in which the place of diversion of said water appropriated is located. In addition, a copy of such notice shall further be served personally or sent by registered mail to all persons appearing from the records of the county clerk or register of deeds to be landowners under such appropriations.

In connection with this contention, the defendant states that on October 11, 1923, when the notice of the proposed hearing for the cancellation of water appropriation under docket No. 847 was issued by the department, and on November 20, 1923, when the hearing was held at North Platte, Albert Langford was the owner of an undivided interest in the fee title of the land covered

by the appropriation. At that time he was deceased, having died in 1922, and his estate was under probate in Scotts Bluff County. No notice was served upon any representative of his estate or his heirs. On the same day, Gold-Stabeck Company held a valid, recorded first mortgage lien on said land and was not served with any notice of hearing for cancellation. The headgates of the canal were in Banner County, and the notice was published in Morrill County. The defendant asserts that the above-mentioned statute requires the service of notice on the owners of such appropriation and publication of the notice in the county where the headgates or diversion is located. In support of this contention the defendant cites several cases to the effect that a judgment rendered by a court without jurisdiction of the parties is absolutely void. See, Omaha Nat. Bank v. Robinson, 73 Neb. 351, 102 N. W. 613, 104 N. W. 1070, 119 Am. S. R. 903; Ehlers v. Grove, 147 Neb. 704, 24 N. W. 2d 866; Board of Trustees of York College v. Cheney, 160 Neb. 631, 71 N. W. 2d 195.

The defendant, in the light of the foregoing, asserts that the order of cancellation made by the State Board of Irrigation dated November 20, 1923, and the water appropriation known as docket No. 847 is still valid and a subsisting property right belonging to the defendant by failure on the part of the State Board of Irrigation to comply with the provisions of the statute existing at the time of the issuance of the notice and the time of hearing.

In analyzing the above-cited statute, it contemplates the owners of water appropriations shall be served personally where the owner is known to the department and if the owner maintains an office within this state. If the owner of the appropriation does not maintain an office within this state, then the notice is to be served by publication in the county where the diversion of the appropriation is located. In the instant case the appropriation was originally taken out by Price P. Waitman,

known also as P. P. Waitman, and it appears from the records of the department that he was the owner of the appropriation. P. P. Waitman died in 1919, so obviously he could not maintain an office in this state. Therefore, the provisions with reference to publication of notice became pertinent. The notice was published in Morrill County and not in Banner County. The defendant contends that the headgate of the canal was located in Banner County, and submits the testimony of Glen Hascall to the effect that there was a diversion dam in Banner County in 1898. The defendant then makes reference to the application to relocate a headgate in Banner County made and approved in 1900. The application to relocate the headgate does not constitute proof of its location, but is proof of an approval to locate the same in Banner County. This type of evidence has no probative value as to whether or not the dam was located in Banner County at the time of the cancellation of docket No. 847. The time that is material as to the location of the diversion works is the time of the cancellation hearing on November 20, 1923. The evidence relied upon by the defendant is removed in time from the cancellation order by at least 23 years, and offers no proof of conditions existing at the time of the cancellation order. The record does disclose evidence as to the time and does furnish proof of the location of the headgate in 1923. Exhibit 16 contains a record of A. E. Johnson, a representative of the Department of Public Works, who inspected the location on September 26, 1923, and placed the location as being in Section 30 in Morrill County. The testimony of Justin S. Smith, the defendant's predecessor in title, stated that there was only one headgate and it was located in Morrill County.

It is apparent that as to the owner of the appropriation, the notice could not be served personally and therefore notice was published in the proper county where the diversion of the canal was located at that time. While there is some disparity in the evidence as to the

location of the headgate, the intervener, by his testimony, explained that the creek, in times of high water, washed out some of the smaller dams and irrigation works along the creek.

With reference to the notice as to the landowners, the statute specifies that a copy of the notice shall be served either personally or by registered mail on "all persons appearing from the records of the county clerk or register of deeds to be landowners under such appropriation." § 46-229.03, R. R. S. 1943. The record discloses that the State, in the cancellation proceedings, secured from the county clerk of Morrill County a certificate of the persons appearing from the records of his office as being owners of land as described thereon. Notice was sent to all parties named in the certificate. The Legislature specified that notice was to go to the party appearing of record to be the owner.

With reference to the interest of Albert Langford, the interest he had in the appropriation appeared of record in his name and not in the names of his heirs. This service of notice was sufficient under the statute.

An underlying principle of the irrigation law is that an irrigation right to be retained must be applied to a beneficial use. The owner of land who personally, or through his agents, operates an irrigated farm is the person who can keep an irrigation right alive by beneficial application of the water and is the person to be notified in the event it is contended the right has not been beneficially used. A mortgagee of property is not entitled to operate the real estate as long as the mortgage continues only as a security document. The mortgagee without foreclosure is not entitled to take over the management of an irrigated farm and apply its water to beneficial purposes unless there is an agreement to that effect, which does not appear in this case.

We hold that the department complied with the statute with regard to notice and the service thereof.

Neilsen asserts there is no inconsistency under the

claim of right evidenced by docket No. 847 and the claim under application No. 6811 on the basis that docket No. 847 applied only to lands north of the creek and application No. 6811 applied only to lands on the south side of the creek. The original plat filed with docket No. 847 shows two canals, one on the south side and one on the north side of the creek. Waitman took over the Dick Brown ditch, and it is admitted by the parties that the Dick Brown ditch was on the south side of the creek. The opinion in connection with the granting of docket No. 847 shows that the appropriation was granted for the southeast quarter of Section 30, among other lands. The claim in docket No. 1055 also shows a portion of the southeast quarter of Section 30 as affected by that claim, which is borne out by the plat submitted therewith. Application No. 6811 lists 30 acres in the southeast quarter, and the plat submitted therewith shows the lands to be irrigated including a part of the southeast quarter of Section 30. All of the southeast quarter of Section 30 lies south of the creek, and no part of the southeast quarter of Section 30 lies north of the creek. It therefore follows that when Waitman was granted the right to irrigate part of the southeast quarter his rights included canals on both the north and south sides of the creek. The evidence also shows that there is an identity between part of the lands included in application No. 6811 and the lands evidenced by docket No. 847.

Subsequent to the cancellation proceedings in docket No. 847, a large number of appropriations have been granted, including the appropriation of the intervener. The defendant asserted no claim to a revitalization of the Waitman appropriation prior to the time of filing his answer on October 11, 1950. Nielsen purchased and entered into possession of the land covered by docket No. 847. He never asserted a claim to rights under docket No. 847 until 18½ years later. Just prior to the time that the intervener made his first application

for appropriation in 1941, the defendant advised him that he had no appropriation with the state and claimed as a riparian owner only. The intervener spent more than $4,200 in development of his irrigation appropriation. Should Nielsen's rights under docket No. 847 be revitalized, then the appropriation granted to the intervener by the department would be valueless.

The record shows that insofar as the State and the intervener are concerned Nielsen stood idly by, but he did make an express representation that he claimed no rights under any appropriation. The intervener relied upon this representation in making his application for appropriation and proceeded to develop the same. Nielsen had knowledge of the application of the intervener for an appropriation of water, and the work and the expense incurred by the intervener in the construction of his irrigation system. He made no protest nor gave any warning that he intended to claim any part of the waters of Pumpkinseed Creek. We believe that under such circumstances the following are applicable.

In State v. Smith, 135 Neb. 423, 281 N. W. 851, estoppel is described as follows, quoting from Graham Ice Cream Co. v. Petros, 127 Neb. 172, 254 N. W. 869: " 'Estoppel means "the preclusion of a person from asserting a fact, by previous conduct inconsistent therewith, on his own part or the part of those under whom he claims, or by an adjudication upon his rights which he cannot be allowed to call in question." Bouvier's Law Dictionary.' " * * * " 'To constitute an "estoppel," in the absence of false representations by the party sought to be estopped, he must have been guilty of such conduct as to have given the person pleading the estoppel reason to believe that a state of facts existed inconsistent with those now asserted against him and in reliance on which he acted.' "

In Carson v. Greeley, 107 Neb. 609, 187 N. W. 47, the court said that when a person knowing his rights takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he can-

not be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. See, also, Kinnan v. France, *supra.*

In Enterprise Irrigation Dist. v. Tri-State Land Co., 92 Neb. 121, 138 N. W. 171, the court said: "It would be manifestly inequitable and unjust to allow the plaintiffs, after the works were practically finished and the money expended, to insist upon claims which, had they been asserted in good time, would at least have put the defendants upon their guard and have given them cause to pause and hesitate in their expenditures until the validity of their title had been determined." The court held that the parties were estopped to assert the claim later.

Apparently the defendant does not contest the right of the representatives of the department to enter upon the lands of the appropriators of water in the performance of their duties as provided for by statute.

We conclude that the Waitman appropriation was effectively canceled by the proceedings of the Department of Public Works in 1923; that abandonment of the water rights under docket No. 847 for more than 10 years resulted in the loss of such rights; that the trial court had jurisdiction to determine the validity of the claim of defendant Nielsen to the Waitman appropriation and the rights of the intervener; and that the doctrine of estoppel applies due to Nielsen's failure to make claim or give any warning to the intervener until the intervener had obtained an appropriation of water from Pumpkinseed Creek at large expense and constructed an irrigation system on his land.

For the reasons given herein, the permanent injunction granted by the trial court is affirmed.

AFFIRMED.