MARTIN GABLE, APPELLEE, V. TERRY CARPENTER ET AL.,
APPELLANTS.
287 N. W. 70

FILED JULY 18, 1939. No. 30512.

*Mothersead & York,* for appellants.

*Beatty, Maupin, Murphy & Davis,* contra.

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

This is a suit in equity to enjoin the violation of a restrictive covenant contained in a contract made and entered into by and between plaintiff Gable and defendant Carpenter, on April 18, 1935, and to recover damages resulting from the breach thereof. The petition further alleges, with necessary particularity, that Martha Hillerege, the mother of Terry Carpenter, and George Hillerege, who is the second husband of Martha Hillerege, and Chester Guthrie conspired together with Terry Carpenter to attempt to evade the contractual provisions referred to, and, as hereinafter set forth, in violation thereof; and in furtherance of their conspiracy said defendants engaged in and carried on a gasoline and oil business in the city of North Platte, Nebraska. Issues were joined and trial had, which resulted in a finding and judgment for plaintiff, permanently enjoining the further continuance of the oil and gasoline business carried on by defendants Terry Carpenter, Martha Hillerege, George

Hillerege, and Chester Guthrie, in North Platte, Nebraska, and assessing damages against defendants Terry Carpenter and Martha Hillerege, jointly and severally, in the sum of $500. From the order of the trial court overruling their several motions for new trial, defendants appeal, and likewise plaintiff prosecutes a cross-appeal as to the recovery permitted him.

The record before us evidences the fact that the determinant issues in this litigation are questions of fact. This being an appeal in equity, it is the duty of this court to retry the issues involved in the case upon the evidence preserved in the bill of exceptions, and, upon a trial *de novo*, to reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence, without reference to the conclusion reached by the district court. Comp. St. 1929, sec. 20-1925. But when the evidence on material issues so conflicts that it cannot be reconciled, this court considers the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. *Graham Ice Cream Co. v. Petros*, 127 Neb. 172, 254 N. W. 869.

It must also be conceded that much important testimony in this case comes from parties closely connected by blood and affinity, and, in addition, closely associated together in business generally, as well as in the particular adventure here under investigation. Under circumstances involving principles somewhat similar, Redick, District Judge, in the opinion adopted by this court in *Dvorak v. Kucera*, 130 Neb. 341, 264 N. W. 737, made the following observations, viz.:

"It is extremely difficult for a reviewing court to arrive at a satisfactory conclusion when the testimony is in conflict and the principal fact to be determined rests upon the evidence of interested witnesses. In such case the judgment of the trial court who had the benefit of seeing the witnesses and observing their deportment while testifying is of considerable weight, notwithstanding the requirement of the statute that the reviewing court shall try the case *de novo*."

There seems to be no substantial dispute in the evidence that Terry Carpenter and Martin Gable were engaged in the gasoline and oil business in North Platte, Nebraska, during 1932 and thereafter, as partners, though the business was conducted and carried on under the name of Terry Carpenter exclusively. In addition, Terry Carpenter was largely engaged in similar lines of business and also as a wholesaler of oil and gasoline, as well as a refiner thereof, in surrounding towns, and throughout the immediate territory in that section of the state. A large and prosperous retail business was developed by these parties at North Platte, under the name or trade-name of "Terry Carpenter." Plaintiff's name was not used in connection with said business, or in the advertising carried on in connection with it, because of the importance and value of the trade-name, "Terry Carpenter." An extensive and valuable good-will was founded and built up by said partnership using the trade-name "Terry Carpenter." In 1935 this partnership was dissolved by mutual consent, and the interest of Terry Carpenter therein, and in the business thereof, as well as in the property owned thereby, including the good-will in connection therewith, was purchased by plaintiff Gable from defendant Terry Carpenter. As evidencing this fact, Gable and Carpenter entered into an agreement in writing, bearing date April 18, 1935, and subscribed by the parties thereto. This agreement recites: "Terry Carpenter is selling to the said Martin Gable all of his interest in and to the gasoline and oil business now owned by the two parties at North Platte, Lincoln county, Nebraska, and all of the property owned and used in connection therewith. * * * So that the said Martin Gable is to own the entire oil business and equipment heretofore owned and used in connection with said business." It also specifies: "It is further agreed by and between the parties that the partnership agreement heretofore made between the parties is dissolved as of March 28th, 1935, but that the said Martin Gable may continue to use the trade-name or the name of Terry Carpenter in connection with the gasoline and oil business for a period of

five years from this date, and the said Terry Carpenter agrees not to engage in the gasoline or oil business within a radius of fifty miles of North Platte, Nebraska, for a period of five years from this date."

The record supports the conclusion that this agreement was substantially performed approximately on the day of its date by the mutual transfers of the respective interests of the parties thereto as required by the terms thereof.

It seems a generally accepted principle that, "Where a contract for the sale and transfer of a business omits to mention the good-will, the presumption is that it was the intention of the parties that the good-will should pass with other assets." 12 R. C. L. 985, sec. 8.

So, also, "On the sale or dissolution of a partnership it is usually held that the succeeding partner or partners have the right to carry on the business under the old name, and this rule has even been extended to a case where the individual's name was the only one that appeared in the name of the firm." 12 R. C. L. 987, sec. 10. See, also, *Churton v. Douglas*, John. (Eng.) 174, 28 L. J. Ch. 841.

In view of the terms of the contract in suit, including the restrictive covenant constituting an essential part thereof, it is obvious that the rights assured thereby to plaintiff herein must mean every advantage that has been acquired by the old firm in carrying on its business, whether connected with the premises in which the business was previously carried on, or with the name of the late firm, or with any other matter carrying with it the benefit of the business. And it necessarily follows that in the transaction and carrying on of the oil and gas business, so acquired by plaintiff, for the limited period and to the extent of territory in the aforesaid contract provided, and by virtue thereof, he acquired the right to use the name "Terry Carpenter" simpliciter and exclusively. The rights claimed in this proceeding being the rights created and vested by the contract in suit, the only question remaining is whether such have been substantially infringed or impaired by defendants,—a clear question of fact.

We will now enumerate the relevant facts, as we deem them to be established by the evidence, bearing in mind that, when evidence on items is conflicting, that which does not support the statement here made is rejected.

The defendant Martha Hillerege, who is the mother of Terry Carpenter, and the general manager of his business affairs, properties and enterprises generally, and exclusively so functioning in his absence, was present in Terry Carpenter's office in Scottsbluff, Nebraska, when the discussion and negotiations were had between Carpenter and plaintiff, which terminated in the written agreement, a part of which is hereinbefore quoted. She had served in that capacity since 1933, and during this period was credited on his books with a salary running from $250 to $300 a month. She was possessed of much authority in relation to Terry Carpenter's business. She employed and discharged employees, had authority to and did draw checks upon Terry Carpenter's account in banks in which he had money on deposit; occasionally paid operating expenses, wages, and other bills from her private funds and reimbursed herself by merely writing a check to herself upon certain of Terry Carpenter's bank accounts. She received credit for her regular salary continuously since 1932. However, she has withdrawn but $15 a week. The balance of her wages earned, exceeding $7,000, stands as a credit on Terry Carpenter's books. George Hillerege is Terry Carpenter's stepfather, and the present husband of Martha Hillerege. He has been continuously employed by Terry Carpenter since 1932, and still is so employed, on a salary basis substantially identical with that of his wife. He has also withdrawn but a small portion of his earnings, and an amount in excess of $7,000 now stands to his credit on the books of his employer. His duties consisted in having charge of Carpenter's motive equipment for transportation, and the routing of trucks in connection with Carpenter's business. Chester Guthrie, the defendant in the instant case who was the operator of the oil and gasoline station involved in this litigation, at North Platte, Nebraska, which it is claimed by defendants was

owned by Mrs. Hillerege and her husband, had been employed by Terry Carpenter between the years 1931 and 1936, and thereafter from 1936 to November, 1937, was employed in a store claimed to have been owned by persons other than Terry Carpenter but located within his place of business at Scottsbluff, Nebraska. However, upon the procuring of the lease upon the station enjoined in this proceeding, Guthrie immediately came to North Platte and commenced work upon the station preparatory to its being opened, and thereafter continued as operator thereof, and the agent in immediate charge of the business at North Platte.

The foregoing constitutes the previous relation of the parties who are the defendants in this action.

The immediate events leading up to the present litigation are, viz.: In November, 1937, Terry Carpenter approached plaintiff with a proposition to lease the oil station and oil and gasoline business which plaintiff had received through the deal of April 18, 1935. The expressed purpose of Carpenter was that he might secure an additional outlet for his petroleum products. The negotiations were unavailing. Later, during the same month, Carpenter conferred in North Platte with a Mr. A. A. Hastings, a real estate dealer, who, it appears from defendants' evidence, had long been a close personal friend and political ally of Carpenter, wherein Carpenter advised Hastings that he wanted to lease a good filling station in North Platte, Nebraska. Hastings informed him of a station then available known as the Whelan station. Upon Carpenter's suggestion, Hastings introduced Carpenter to Whelan, and negotiations were then entered into concerning the leasing of these premises. As a result of these conversations a lease was prepared by Evans & Simon, North Platte attorneys, providing for the leasing of the Whelan filling station to George Hillerege for a term of two years. In connection with this lease another instrument was prepared, entitled "Guaranty and Ratification," by the terms of which Terry Carpenter agreed to indemnify Whelan by reason of any default to pay the rent due or to con-

form to the covenants of the lease. The evidence sustains the conclusion that, at or previous to the time of these negotiations, George Hillerege had had no conversation regarding same and knew nothing of the proposed agreement, but has been cooperating as required by his employment. It is certain that, upon receipt of these papers at Scottsbluff by Carpenter, they were finally turned over to Mrs. Martha Hillerege. In the meanwhile Hastings learned that another more desirable station in North Platte was available for rental, which is called the Ryan station. Hastings thereupon called up Carpenter by telephone at Scottsbluff and advised him of the facts. Carpenter replied that he would send some one down to look it over. A few days later Mrs. Martha Hillerege, accompanied by a nephew, Don Hillerege (also an employee of Terry Carpenter), came to North Platte, and both the Whelan station and the Ryan station were investigated. On this trip Mrs. Hillerege returned to Hastings the two instruments which had been previously prepared by leasing the Whelan station. She and her nephew then returned to Scottsbluff without finally completing a deal. Shortly thereafter, on November 27, 1937, Mrs. Hillerege and her nephew returned to North Platte, completed a deal for leasing the Ryan station (the one in issue in this proceeding), and executed a lease for the same for a period of ten years for the sum of $2,000. In payment of this sum, Mrs. Hillerege gave her checks on the Scottsbluff National Bank, one for $1,480 and one for $120, and executed her promissory note of $400 payable on or before January 1, 1938. On the completion of this transaction Mrs. Hillerege told Hastings that she did not want Gable or any one else to know about it. The $400 note was paid in due time by the maker, but the evidence fairly discloses that the ultimate source of the moneys from which the checks were paid and the note satisfied was the funds of Terry Carpenter. The facts and circumstances in the record fully sustain the conclusion that he was the real party in interest in making this purchase. In addition to this, there is evidence in the record of a petroleum transporter

from Alliance, in reference to a conversation had with Terry Carpenter by such petroleum transporter in November or December, 1937, concerning the hauling of gas and oil for Carpenter to North Platte, Nebraska, at which time Carpenter stated to him that a contract for such hauling could not be made since Carpenter could not operate his station at North Platte under his own name on account of a deal he had with Martin Gable, and that he had some of his relatives then operating the station at North Platte for him. Immediately upon the acquisition of this lease of the Ryan station, employees of Terry Carpenter came to North Platte and engaged in remodelling the station. An extensive advertising campaign was immediately undertaken, in which the name of Terry Carpenter and his products were widely emphasized in connection with the new station. Gasoline pumps were installed bearing Terry Carpenter's name; employees displayed his name upon their uniforms; the gasoline truck used for local transportation bore the name and advertised the products of Terry Carpenter. Large import trucks bearing the name of Terry Carpenter delivered their products to the station. The name of Hillerege did not appear in connection with the business either upon buildings or equipment, or upon supplies, sales slips and the like used in the course of the business. After the institution of the instant action a change of the methods of carrying on this business became evident, and the name "Hillerege" was placed on sign, etc., for the first time. The wide publicity and the advertising campaign thus carried on convinced the public that the new station was that of Terry Carpenter, with resulting damages to plaintiff in loss of business and loss of customers. In the evidence we have proof as to sales made by the new station, the nature of products sold, the amounts paid for them, and to whom. It is quite obvious that Terry Carpenter, in the new station, found what he was seeking when he endeavored to lease plaintiff's station in November, 1937, viz., an additional outlet for his petroleum products.

In consideration of the proof in this record we keep in

mind that "equity regards the substance and intent, not the form." 21 C. J. 204. So considered, the facts of the record clearly establish that the transactions carried on by defendants are fraudulent and constitute fraudulent devices by which it is sought to circumvent and destroy the obligations imposed on Terry Carpenter by the contract of April 18, 1935; that the business carried on is, substantially, owned, controlled, and directed by, and pursuant to the policies of, Terry Carpenter, in plain, wilful violation of the terms of his contract. In accomplishing this object he is receiving the aid and cooperation of the other defendants. These defendants, including Carpenter, are in truth and in fact conspirators cooperating to accomplish this desired end. Therefore, the injunction issued and served in this case was proper and fully justified by the pleadings and the evidence, and is, in all respects, sustained.

We have carefully examined the subject of damages awarded by the trial court. We are convinced that the amount awarded is fairly supported by the evidence, and equally certain that an increase thereof is not justified by the record before us.

It follows that the decree of the district court is, in all respects, correct, and it is

AFFIRMED.