**J. I. POTTER et al., Appellants,**

v.

**Francis W. COLVIN et al., Appellees.**

Court of Appeals of Kentucky.

March 29, 1957.

Rehearing Denied June 7, 1957.

Joseph S. Freeland, David R. Reed, Paducah, for appellants.

Richard R. Bryan, C. W. Runyan, Paducah, for appellees.

MOREMEN, Judge.

Prior to 1952, appellants, J. I. Potter and his wife, Evelyn Potter, owned and operated a twenty-two unit motel in McCracken County about three miles west of Paducah on the west side of U. S. Highway 60. They also operated a restaurant which was

situated close to the highway. The motel was located about two hundred feet in the rear of the restaurant. A semi-circular driveway connected the motel with the highway, the entrance being to the west of the restaurant and the exit to the east.

Appellees, Francis W. Colvin and his wife, Alma S. Colvin, came to Kentucky and entered into negotiations with appellants for the purpose of purchasing the motel and, on January 15, 1952, a sale was consummated. Appellants executed a deed by which was conveyed the motel property and land which surrounded it. Excepted from this conveyance was an area about 150 x 322 feet on which was situated the restaurant. Appellants retained the land they owned which was located to the east from the restaurant and immediately beyond the driveway exit. This deed appears to be the only instrument executed in connection with the sale. If a bill of sale was executed for the personal property or for any of the implements, fixtures, or other property necessary in the operation of a motel enterprise, it does not appear of record. The deed is in the form customarily used for the conveyance of realty. It is only what it purports to be—a simple deed. It contains no express grant of good will nor does it have a promise by the appellants not to compete with appellees in the motel business. After the deed was executed and appellees had obtained possession of the property, appellants constructed another motel on the ground which lies east of the property on which the restaurant and the motel are located. Thereafter, the business and the profits of the motel which appellees had purchased decreased.

Appellees filed a complaint in which they sought to recoup their losses and to recover damages for the diminution in value of their motel property. The action was based on the theory that the deed constituted a complete sale of the motel business as a going concern and included, impliedly, the sale of good will and, under such circumstances, the grantors owed to appellees a duty to refrain from doing acts which might hurt the business of the grantees.

The harmful acts of which appellees complained are several. The original motel of twenty-two units was named Timbers Motel and the new motel was named Timberlane Lodge. Appellees insisted that because of the similarity in names, customers had been deliberately confused and had been diverted from patronage of the Timbers Motel. Other complaints were that appellants had erected the new motel in such a fashion as to hide appellees' motel from travelers on the road; that they built a barbecue stand and piled wood near it so that the Timbers Motel would be further concealed; that they erected a "deceptive sign" on the roof of their motel reading "Motel Main Office," and thus caused people to believe that the Timbers Motel was a part of the Timberlane Lodge. Appellees also contended that the appellants, through various tricks and devices, enticed persons into staying at their lodge rather that at appellees' motel.

After all the evidence was produced on the trial of the case, the court instructed the jury to the effect that "when a person sells a going business, he sells not only the physical land, buildings and property, but also sells the good will. The good will may be sold by express contract, but if there is no express contract, by implication of law places certain obligations on the part of the seller. Thus under the law, there is an implied promise, which is a part of the contract of sale, that the seller will not solicit the trade of old customers nor do any act that will interfere with the buyer's use and enjoyment of the property, including the good will property right described above." He also instructed that the appellants were under a duty not "to purposely impair the purchaser's business," nor "to deliberately and purposely interfere with and injure and impair and destroy the business and good will" of the appellees. It thus seems that the trial court felt that if appellants by deliberate acts injured the appellees, the appellees should recover.

The jury awarded $40,000 for diminution in value of the motel property and $8,625.32 for loss of profit. In an annotation found in 82 A.L.R. at page 1031, it is said that as a general rule, in the absence of an express covenant, the sale of a business, together with the good will thereof, does not import an agreement by the vendor not again to engage in a competing business. Many cases from fifteen states and the Dominion of Canada are cited in support of the rule. It is also pointed out in the same annotation that the Massachusetts rule is different. In that state a person who voluntarily sells the good will of a business thereby precludes himself from setting up a competing business that would be harmful to the business that has been sold. We have no case in point in this state.

First, it seems we must determine whether, under the facts of this case, good will was conveyed by the instrument that was executed by the parties. We find no express agreement and we believe none should be implied. Appellees have cited a number of cases to support their theory that there was an implied sale of good will and we believe the novelty of this question in this state requires an examination of those cases cited.

In Didlake v. Roden Grocery, 160 Ala. 484, 49 So. 384, 387, 22 L.R.A.,N.S. 907, one of the partners died and their wholesale grocery was dissolved. The court held that the good will of a mercantile firm is a species of property which will be considered in valuing a going concern, and, if the business is continued by surviving partners under an agreement, the good will of the business will be *considered* in *settling* with the estate of a deceased partner. This point is not disputed—the deceased partner owns a property right in the good will and it should be considered in estimating the value of the partnership. However, the court made one point worthy of mention: "In using this expression, it is not to be understood that by the good will going with the sale the seller would be precluded from re-engaging in the same business in the same locality. That result does not follow without a special agreement to that effect."

Mahlstedt v. Fugit, 79 Cal.App.2d 562, 180 P.2d 777, presents the question whether a buyer of a business acquires the right to use the seller's name in the absence of an agreement. The court found that there was an *express* agreement to sell the good will and also an express covenant not to compete, but concluded that this alone would not give the buyer the right to the use of the seller's name in connection with the business.

In Vancil v. Anderson, 71 Idaho 95, 227 P.2d 74, it was held that even though the contract failed to mention good will expressly, it was the seller's intention to sell the good will of the business in that there was an express agreement not to engage in the same or similar business in that area. Again, this is distinguishable from the case at bar because it was a sale of a business. It is further distinguishable in that there was an express agreement not to compete with the purchaser.

Gable v. Carpenter, 136 Neb. 669, 287 N.W. 70, is distinguishable for the same two reasons in the above case, i. e., the sale of a "business" and an express agreement not to compete.

Langberg v. Wagner, 101 N.J.Eq. 383, 139 A. 518, also is distinguishable in that there was an express agreement not to compete.

Riddlesperger v. Malakoff Gin Co., Tex. Civ.App., 229 S.W. 636, 638, also is not in point. Here there was an agreement to refrain from operating another plant in the community. The court held: "By the contract the appellant had not only parted with the gin plant, but also conveyed their good will. While good will was not mentioned in the contract, the character of the transaction was such as to pass it by implication."

Engstrom v. Larson, 77 N.D. 541, 44 N. W.2d 97, 103, comes nearer to being analagous to our concern in that there was no agreement not to compete. However, it is easily distinguishable on the facts. Briefly, the facts: The buyer purchased a cafe with all physical properties utilized in its operation. The bill of sale which the seller executed and delivered to the buyer specifically covered all restaurant and kitchen furniture, fixtures and equipment located and used in and about the cafe, " 'including all dishes, cooking utensils, tools, counters, shelves, show-cases, stools, cash-registers, stoves, refrigerators, freezing equipment, dishwashing machines, water heater, steam tables *and each and every other thing used in and about* the operation of said cafe.' " The court held that the sale of a business will be presumed, in the absence of any contrary agreement or expression, to pass the good will of the business with other assets, and said: "At the same time they obtained a lease for the premises so that it was understood between the parties that the business would continue to be carried on in the same location where it had been carried on. Hence, it is quite likely that nothing was said about good will and that Oliver [buyer] did not make any appraisal thereof as a separate item, for he would naturally assume that the good will passed as an incident of the business." But it should be noted that all the other items were particularly described.

■ We have concluded, generally, that the following rules are acceptable:

1. A sale of a business, together with the good will thereof, does not imply an agreement by the vendor not again to engage in a competing business.

2. A sale of good will is not to be implied, unless it may be reasonably inferred from the contract of sale that the parties intended to sell it.

■ In the instant case, we have concluded, specially, that:

1. Appellants were not prohibited from engaging in a competing business, and had a right to build and operate the new competing motel.

2. The simple deed of conveyance did not convey the item of good will.

The instructions in this case, as we have noted above, were based upon the assumption that the good will had been sold, and, in such case the seller would not be permitted to solicit the trade of old customers nor do any act that would interfere with the buyer's use and enjoyment of the property. The instructions indicate that the seller is not denied the right to engage in a competitive business, but place limitations upon the competition as would be applicable in cases where the good will had passed under the instrument. The jury was told that appellants were prohibited from attempting to injure or destroy the good will and continued patronage of the Timbers Motel.

In Belfry Coal Corporation v. East Kentucky Beverage Co., Ky., 294 S.W.2d 539, we recognized that nearly all competitors try to eliminate their rivals in their struggle to conduct a profitable business and where two motels in one locality compete for a customer, the one deprived of his patronage is necessarily hurt but the fact that he is hurt does not give rise to a cause of action unless the victor has indulged in unfair trade practices. In other words, proper competition may result in the injury of the competitor but this is not prohibited in law.

We are of opinion that appellants' action should be gauged by the standards which ordinarily exist between rivals in a business and the situation differs little from a case where two parties buy adjoining land, build, and compete in the same business. In such cases there are certain rules of law governing unfair competition and those are the ones which should have been applied in the case at bar.

On retrial of this case, if the proof is substantially the same, the court should

eliminate those portions of the instructions which deal with the implied sale of good will and which permit appellees to recover for diminution in the value of the realty because of violation of the assumed covenant for the sale of good will. The instructions should be confined only to those acts for which damages may be recovered in the ordinary action brought about by unfair competition between business rivals.

Judgment reversed.