JOHN H. KERSENBROCK, APPELLANT, V. BURDETTE BOYES; BLUE RIVER POWER COMPANY ET AL., APPELLEES.

FILED FEBRUARY 27, 1914.   No. 18,114.

1. **Waters: IRRIGATION: CANCELATION OF WATER APPROPRIATIONS.** The irrigation law of 1911, authorizing the state board of irrigation to cancel water appropriations not put to a "beneficial or useful purpose," applies to applications made both before and after the passage of the act. Laws 1911, ch. 153, secs. 17-37.

2. ———: ———: ———: **VALIDITY OF STATUTE.** Under the irrigation law of 1911, the authority of the state board of irrigation to cancel an application to appropriate public water for irrigation or power may be exercised after notice and an opportunity to be heard, "if it appears that such water appropriation has not been put to a beneficial or useful purpose," and the legislation is not void because it applies to both past and future applications.

3. ———: ———: **ACQUISITION OF WATER RIGHTS.** A vested right to the use of public water for irrigation or power depends upon the appropriator's compliance with the conditions imposed by statute, and is not acquired by means of a certificate procured by fraud from the state board of irrigation.

4. ———: ———: ———. A feasible plan for applying public water to a beneficial use, undertaken and carried out in good faith by an appropriator, is necessary to the acquiring of a vested right to a statutory appropriation for irrigation or power.

5. ———: ———: ———: **LIMITATIONS** Under the laws in force before the irrigation act of 1911 was passed, an applicant for an appropriation of water did not, as a matter of right, have more than ten years to comply with statutory conditions for acquiring such an appropriation.

6. ———: **STATE BOARD OF IRRIGATION: APPEAL.** Upon appeal from an order of the state board of irrigation, the inquiry is ordinarily limited to the questions submitted to that tribunal.

7. ———: ———: **POWERS.** The state board of irrigation is a tribunal, quasi-judicial in its nature, with authority to perform statutory duties in administering public waters, and is not disqualified to hear a controversy between the state and an appropriator whose right is contested by the state.

APPEAL from the district court for Seward county: EDWARD E. GOOD, JUDGE. *Affirmed.*

*B. F. Good, W. N. Hensley* and *A. M. Bunting,* for appellant.

*Edwin Vail, Norval Bros.* and *J. J. Thomas, contra.*

ROSE, J.

The subject of controversy is the right of plaintiff to use for irrigation and power public water of the west fork of the Blue river, where it crosses his land near the center of the southeast quarter of section 32, township 9, range 3 east, in Seward county. Plaintiff asserts that he acquired water rights under two applications made to the state board of irrigation, December 20, 1895, one for an appropriation of 2 1/7 cubic feet of water a second for irrigation, and the other for an appropriation of 105 cubic feet of water a second for the generating of power for a grist-mill and for the pumping of water for irrigation, including the right to construct a dam five feet high at the place described. A certificate evidencing the appropriation for irrigation was issued to plaintiff May 20, 1907; but no certificate showing an appropriation for power was ever issued to him, though he pleads that he complied with statutory conditions; that he performed the necessary work and made the required improvements; that he applied public water to beneficial uses; that he acquired, and still retains, the right sought under both applications; and that his privilege of applying water to beneficial uses still exists. His claims are resisted by the Blue River Power Company and the state of Nebraska, defendants, on the grounds that he never perfected his appropriations by complying with statutory conditions; that he never applied public water to a beneficial use; that his certificate was procured by fraud; that, even if he had used water for irrigation, he abandoned the use in 1896, and thus lost the right; that no certificate of appropriation for power was ever issued to him, or such a right acquired; that for more than ten years no beneficial use of public water has been made under either application. The Blue River Power Company, defendant, filed with the state board, Jan-

uary 3, 1912, an application for an appropriation of 100 cubic feet of water a second for the purpose of operating an electric power plant on the site described in plaintiff's applications, including the right to construct at the same place a dam 15 feet high. Rival applicants having asserted the right to use the same public water at the same site, the state board, February 13, 1912, directed plaintiff to appear and show cause why his applications should not be canceled. Upon a trial of the issues the state board canceled both of the applications of plaintiff June 15, 1912, and he appealed to the district court for Seward county, where the facts were fully pleaded. After the parties on both sides had adduced proofs at great length, the trial court found all of the issues in favor of defendants and upheld the order of the state board. Plaintiff appeals to this court for the relief denied below.

Plaintiff argues that the action of the state board in attempting to cancel his water rights was premature. This proposition is based on the law of 1911, providing that "immediately upon the passage and approval of this act, or as soon as possible, and as often thereafter as shall be necessary, it shall be the duty of the state board to examine into the condition of every water appropriation within this state," and that, after a notice and an appearance, "the said board shall hear evidence, and if it appears that such water appropriation has not been put to a beneficial or useful purpose, or having ceased to be used for such purpose for more than three years, the same shall be declared canceled and anulled." This statute went into effect April 10, 1911. Laws 1911, ch. 153, secs. 17, 37. Plaintiff insists that it operates prospectively only, and permits him to make a beneficial use of water any time within three years from the enactment of the statute, or any time before April 10, 1914; that the board cannot cancel his water rights at an earlier date; that he is a riparian proprietor; that he spent large sums of money in making improvements; and that he acquired vested rights which cannot be taken away without the allowance of a

reasonable time after the passage of the act to apply water to beneficial uses.

It seems clear that the legislature, in passing the act of 1911, conferred upon the state board power to cancel prior applications for appropriations of water without waiting three years. The law was passed with an emergency clause, making it effective upon its approval. The state board was directed to act "immediately," or "as soon as possible," and "as often thereafter as shall be necessary." The power to cancel exists after notice and an opportunity to be heard, "if it appears that such water appropriation has not been put to a beneficial or useful purpose." The terms of the statute, therefore, make it clear that the power to cancel applies to former cases, where "such water appropriation has not been put to a beneficial or useful purpose," within the meaning of the law, and that it may be exercised after reasonable notice and an opportunity to be heard. The power to cancel applications for failure of applicants to comply with statutory conditions applies alike to the past and the future, and on familiar principles the act of the legislature is not for that reason void.

Did the state board in canceling the applications of plaintiff deprive him of vested rights? He was notified by the state board to appear and show cause why his applications should not be canceled. He had an opportunity to make his defense. From an adverse order he appealed to the district court, where formal pleadings were filed by all of the parties and where the cause was tried according to established forms of procedure in courts of justice. Plaintiff insists that the action of the state board, if sustained, will deprive him of his investments, of his site for a dam, and interfere with prospecting for minerals. It is true that he expended large amounts of money in constructing a dam, in installing a pump, in conveying water from the river to his land, and in drilling for minerals. However, a vested right to the use of public water, for irrigation or power, depends upon compliance with the conditions imposed by statute. The certificate of

the state board that plaintiff had acquired an appropriation of water for irrigation did not of itself create or grant such a right. It was, at best, evidence of a water right. Plaintiff made his applications under the act of 1895. Laws, 1895, ch. 69. Beneficial use of water was a condition of his right to a certificate under that statute, as well as under the act of 1911. His own testimony shows that he made false statements to the state board relating to his compliance with conditions on which a water right for irrigation depends. He did not comply with statutory · obligations. His certificate was procured by fraud. It granted no rights. While he pumped water out of the river and conveyed it to his land, he provided no practical means of distribution or of application to a "beneficial use," within the meaning of the irrigation law. A feasible scheme of irrigation, as contemplated by statute, was wanting. Though the evidence is uncontradicted that plaintiff has made no attempt at irrigation since 1896, the finding of the trial court that he never applied any water to a beneficial use for that purpose is manifestly correct. It follows that in this respect he neither acquired nor lost a vested right.

Plaintiff's other application contemplated the construction and maintenance of a dam five feet high, the running of a grist-mill, and the pumping of water for irrigation. The conditions of acquiring rights under this application, as indicated on its face, required plaintiff to begin the work of construction by June 1, 1898, to complete it and to apply waters to a beneficial use by September 1, 1899. Proof of compliance with these conditions was never made, and no certificate to that effect was ever issued. It has already been shown that water pumped for irrigation was not applied to a beneficial use. No grist-mill was erected, and only a small quantity of feed was ground with water-power. For a period of more than ten years before plaintiff was cited to appear before the state board, the dam was not in a condition to generate power for the beneficial uses of pumping water for irrigation or for running a grist-mill. The evidence shows clearly that plaintiff did

not comply with statutory conditions or make a beneficial use of public water under either application. A feasible plan, undertaken and carried out in good faith, is necessary to a vested right to a statutory appropriation of water for irrigation or power. Within the meaning of the statute, plaintiff did not apply water to a beneficial use under either application, and consequently he did not acquire a vested right, which the state board could not cancel.

It is suggested that the act of 1895, under which plaintiff's applications were made, did not limit the time to apply water to beneficial uses. That act declares: "All appropriations for water must be for some beneficial or useful purpose, and when the appropriator or his successor in interest ceases to use it for such purpose the right ceases." Laws 1895, ch. 69, sec. 18. Under any construction of the act, plaintiff did not have over ten years to comply with statutory conditions. *Farmers Canal Co. v. Frank*, 72 Neb. 136. Even that period had expired before the act of 1911 was passed, and before any action to cancel his applications had been taken by the state board.

This is an appeal to the district court from an order of the state board, and is confined to the cancelation of the applications made by plaintiff. His rights as a riparian proprietor and an alleged trespass by the Blue River Power Company upon his site for a dam are not involved or considered.

It is further argued that the state is a party to the proceeding, and cannot sit in its own case to cancel rights which it has granted. The position is untenable. The state board is a tribunal, quasi-judicial in its nature, with authority to perform statutory duties in administering the public waters of the state. *Farmers Canal Co. v. Frank*, 72 Neb. 136. The state board is impartial between plaintiff and the state. It is no more disqualified in this case than a court in an action between an individual and the state.

There is no error in the record.

AFFIRMED.

HAMER, J., dissenting.

Appellant is the owner of the southeast quarter of section 32, township 9, range 3 east, in Seward county. He has owned the land, as it is claimed, for more than 20 years. The west fork of the Blue river runs through it. It is claimed there is plenty of water in that stream for power purposes, as also for domestic use. The appellant undertook to make use of the water in the west fork for irrigation and power purposes. A certificate of appropriation seems to have been issued to Kersenbrock by the state board of irrigation May 20, 1907. Proof seems to have been submitted November 20, 1900, and the application had been made on the 16th day of March, 1898. The first application was No. 211. On December 20, 1895, Kersenbrock filed a second application, No. 214. This seems to have been granted by the board, and gave him the right to use 105 cubic feet a second for power purposes, and the right to build a dam five feet above low-water mark upon his land. In September preceding the applications, Kersenbrock built a substantial dam across the west fork of the Blue river at the point designated, and installed a large amount of machinery, pumps and reservoirs, said to have cost him in all about $8,000. He constructed reservoirs, flumes, and pumps and power-house. It is claimed by the appellant that certificate No. 318, of date May 20, 1907, gives an undisputed right to construct the dam and make a beneficial use of the waters for the purposes set forth in the application. It is claimed that the appellant has expended about $9,000 in the improvement mentioned, and it is alleged that he intends to continue the prosecution of his work; that, while the dam is out of repair, he is ready to repair it, and to replace in his power-house machinery designed to aid in the prosecution of his work; that he intends to further develop the work that he has begun.

On the 3d day of January, 1912, the Blue River Power Company filed an application before the state board of irrigation, drainage and highways for the right to use 100

cubic feet of water a second out of the west fork of the
Blue river, and upon the same site covered by the above
applications of the appellant, Nos: 211 and 214. On February 13, 1912, a notice was served upon the appellant,
Kersenbrock, citing him to appear on March 16 and show
cause why his rights under the above application should
not have been canceled. Kersenbrock appeared. A series
of hearings were had. Ultimately the board made an order canceling Kersenbrock's rights. He then appealed to
the district court for Seward county. That court rendered
a decree against him. He has appealed to this court from
the decree of the district court for Seward county. Section 6797 Ann. St. 1911, provided, before its repeal: "All
appropriations for water must be for some beneficial or
useful purpose, and when the appropriator or his successor in interest ceases to use it for such purpose the
right ceases."

On the 4th day of April, 1911, this statute was amended,
and its substance so changed as to provide that *immediately* upon the passage and approval of this act, or as soon
as possible, and as often thereafter as shall be necessary, it
shall be the duty of the state board to examine into the
condition of every water appropriation within this state,
either by its secretary, assistant secretary, or superintendents, and into the condition of all ditches and canals constructed or partially constructed within the state of Nebraska. There is a further provision that a report shall
be made, and that, if it shall appear that any water appropriation has not been used for a beneficial purpose for
more than three years, then the state board shall appoint
a place and time of hearing, and shall serve notice upon
the person, association or corporation owning such water
appropriation, or owning such ditch or canal, or other
diverting works, to show cause by such time why the water
appropriation should not be declared forfeited and annulled; also that such notice shall be served upon the landowners under such appropriation ditch or canal. It is
urged that before the enactment of this statute there was
no specific statute of limitations fixing the time within

which appropriators of water should make beneficial use
for the purpose indicated in their applications. It is con-
tended with much force that the grants heretofore issued
cannot be set aside for non-user, or for any other cause
until the appropriators are given their day in court. It is
said that the legislature fixed a time in the enactment
within which appropriators must make a beneficial use of
waters under their applications, and a tribunal in which
the appropriator has a right to be heard. It is objected
that the legislature attempted to enact a statute of limita-
tions, and to make it "effective immediately." I do not
think this can be done. Prior to the passage of this act it
was possible for the appropriator to make an application
for the water and to apply it as best he could. This statute
should be construed in the light of the circumstances and
all the facts. The irrigators in this state are generally in
a new section of the state, and they are not able to do
what the appropriator did in this case—spend $9,000 in
the development of his plant. If the irrigator indicates
his good faith by the construction of a dam and ditch and
a pump, or other means of diversion, he ought to have a
fair opportunity to complete his plant, and his property
should not be summarily taken away from him. I am un-
able to agree with the majority opinion that the state board
of irrigation, drainage and highways has the power to at
once cancel the appropriator's right because he has been
slow to develop his property, or because he has been un-
fortunate in having his dam swept away by a flood. In
any event there should be a statute of limitations. No
such statute has been passed.

There should be a hearing before a *court*. The state
board of irrigation is not a court under our constitution,
and does not have authority to deprive any man of his
property.

In *Whiffin v. Higgenbotham*, 80 Neb. 468, it is said in
the syllabus: "Section 242 of the revenue act of 1903
(Comp. St., ch. 77, art. I) saves to the parties purchasing
land at tax sales held prior to the passage of that act all
rights, vested or otherwise, extended to them by the stat-

ute in force when the purchase was made." The principle declared in that case is certainly applicable to this one. Whatever right the appellant had prior to the passage of this new act he still has until it is taken away from him by a hearing in a court, and after the period provided by a reasonable statute of limitations has expired. While the statute of limitations may be changed, there must be such a statute, and the period fixed must be reasonable. In the body of the opinion in the *Whiffin* case it is said: "We cannot presume that the legislature passed a meaningless statute, and the only force which this section can have is to save to the plaintiff and others in his position every right given him by the old revenue law."

In *Vance v. Vance*, 108 U. S. 514, Mr. Justice Miller, delivering the opinion of the court, said that the time given for the act to be done must be a reasonable time. The right of a water appropriator is, and ought to be, quite as substantial as the right of the owner of the legal title to real estate.

In *Farmers Canal Co. v. Frank*, 72 Neb. 136, it is said in paragraph four of the syllabus: "Non-user must be continued for a time equal to the statutory limitation upon actions to recover the possession of real property, in order to lose the right of appropriation." In paragraph three of the same syllabus it is said: "Under the facts in this case, *held*, that the right of the Farmers Canal Company and its successor, Roberts Walker, to the appropriation of water awarded under the adjudication of the state board of irrigation has not been lost by abandonment." It will be remembered in that case the work covered a long period of time. Under the rule laid down in that case, the appellant in this case, up to the time of the passage of the new act, was in quite as good condition as the successful litigant in the *Frank* case. Shall the courts protect a litigant in such a case as the *Frank* case, while the legislature legislates another litigant out of existence in such a case as the present one? The similarity of the cases as to time is apparent. It is the difference in results

that tends to demonstrate a condition not readily understood.

The new statute seems to add three years' time within which Kersenbrock may make a beneficial use of the water under his rights. I am wholly unable to agree with the majority opinion. It seems to authorize the destruction of substantial property rights without a proper hearing.