STATE OF NEBRASKA, APPELLANT, V. DELAWARE-HICKMAN DITCH COMPANY, APPELLEE.

FILED OCTOBER 15, 1926. No. 24377.

1. **Appeal in Equity: TRIAL DE NOVO.** When an action in equity is appealed, it is the duty of this court to try the issues de novo and to reach an independent conclusion without reference to the findings of the district court. Comp. St. 1922, sec. 9150. But in a case wherein the court has made a personal examination of the physical facts, and where, in the same case, the oral evidence in respect of material issues is so conflicting that it cannot be reconciled, this court will consider the fact that such examination was made and that such court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. *Greusel v. Payne*, 107 Neb. 84.

2. **Affirmance.** Upon examination of the record, we find that the judgment is amply supported by the evidence.

APPEAL from the district court for Dundy county: CHARLES E. ELDRED, JUDGE. *Affirmed.*

*O. S. Spillman, Attorney General, Lee Basye,* and *Sullivan, Wright & Thummel,* for appellant.

*Scott & Scott* and *McDonald & Irwin,* contra.

Heard before ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

The Delaware-Hickman Ditch Company, of Dundy county, hereinafter called the company, and its officers were cited under section 8428, Comp. St. 1922, to appear at Bridgeport, before the department of public works, there to show cause why its appropriation for a certain quantity of water for irrigation purposes from the Republican river, in Dundy county, Nebraska, should not be canceled and forfeited, on the alleged ground of nonuser.

Defendants own and occupy 1,280 acres of land under the ditch, and in their joint answer it is alleged, in sub-

stance, that for many years they used the water pursuant to the appropriation, in fact, ever since 1895, when the grant was obtained, and that, shortly thereafter, they constructed the headgate, main ditch and laterals, and the irrigation works generally, and appropriated such water as was needed to irrigate the above mentioned lands. And they alleged that practically every year large sums of money were expended by them for the construction, upkeep and maintenance of the ditch and to keep it and the works generally in repair. It is also alleged that the soil through which the ditch runs is a light, sandy, porous loam and is therefore "subject to seepage," and much of the land under the ditch has received great benefit by reason of subirrigation, so that it did not at all times require the application of surface irrigation, unless the rainfall was deficient, and that at such times, when irrigation was deemed expedient and appeared to be necessary, the land was regularly irrigated through and by means of the ditch and the works generally. It is alleged, too, that, during all of the time since the appropriation of water involved herein, the headgate, main ditch, laterals, drops, spillway, and the works generally, have been kept in a reasonably efficient and operative condition and capable of furnishing the water for which the project was constructed. And defendants insist that they have in no way, either by word or act, abandoned the right to use the full appropriation, and have never entertained any intention to abandon any right acquired through the appropriation.

In support of defendants' material allegations there is evidence tending to prove that, during a part of the time involved in this inquiry, there was no water available in the Republican river, so that, of course, irrigation from that source temporarily ceased; but, when needed, it was regularly turned into the ditch. A ditch foreman was employed each year, the evidence shows, and from $250 to $300 was expended yearly for ditch repairs exclusive of labor costs. It is also disclosed by defendants' witnesses that it was the expressed policy and the uniform practice

of the company to extend the ditch to all points where the water might be beneficially used.

George E. Johnson, then secretary of the department of public works, caused to be attached to the record certain instruments purporting to be verified copies of original reports made by the water commissioner which were adverse to the contention of defendants. Mr. Bailey, the commissioner, testified that he acted in that capacity while he was engaged with other work which was entirely aside from his duties as water commissioner. Other witnesses called by the department of public works gave evidence which, in some particulars, flatly contradicted that of the defendants. And in respect of the evidence, plaintiff frankly makes this concession in his brief: "Many apparent conflicts appear and much indefiniteness in the use of terms occurs."

Some of the evidence was taken in the form of depositions and some oral evidence was submitted in the presence of the court. And, besides, the court's findings disclose that the trial judge, accompanied by counsel for the opposing parties, made a personal examination of the irrigation works in suit throughout all its course; so that the court not only saw and heard many of the material witnesses who testified, but a personal examination of the physical facts was made as well.

So much of the court's findings as are immediately pertinent to the facts follow:

"Proceeding to consideration of the case upon its merits, the court finds from the evidence and the observations made at the examination of the works and grounds, pursuant to the stipulation of counsel, that the contestee, Delaware-Hickman Ditch Company, has constructed and is maintaining the irrigation works in question, and that the structures and appliances used in connection therewith are of a feasible and practical nature, and adapted to the purposes for which constructed; that the water of the Republican river has been put to the beneficial and useful purpose of irrigating lands for which the appropriation was made; the works and structures are probably as sub-

stantial as the size of the ditch would justify, particularly when consideration is given to the irregularity of the supply of water and demand for water; that at times there is no available water in the river at the point of diversion, and at times irrigation not necessary; that there has never been an abandonment of such irrigation project, and there has not been a failure to use said works, nor to apply the water appropriated thereby for irrigation purposes for a period of three consecutive years. The court finds generally in favor of the contestee and against the contestant."

The rule is that, when an action in equity is appealed, it is the duty of this court to try the issues *de novo* and to reach an independent conclusion without reference to the findings of the district court. Comp. St. 1922, sec. 9150. But in a case wherein the court has made a personal examination of the physical facts, and where, in the same case, the oral evidence in respect of material issues is so conflicting that it cannot be reconciled, this court will consider the fact that such examination was made and that such court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. *Greusel v. Payne,* 107 Neb. 84.

Reversible error has not been pointed out. It follows that the judgment must be, and it hereby is,

AFFIRMED.