IN RE WATER APPROPRIATION. ROBERT HOSTETLER ET AL., APPELLANTS, V. STATE OF NEBRASKA, DEPARTMENT OF WATER RESOURCES, APPELLEE.

280 N. W. 2d 75

Filed June 19, 1979. No. 42333.

Healey, Healey, Brown & Wieland, for appellants.

Paul L. Douglas, Attorney General, and Paul W. Snyder, for appellee.

Heard before KRIVOSHA, C. J., CLINTON, WHITE, and HASTINGS, JJ., and MURPHY, District Judge.

CLINTON, J.

This is an appeal from an order of the Department of Water Resources, made under the provisions of section 46-229.02 et seq., R. R. S. 1943, canceling and annulling a water appropriation identified as docket No. 305 with priority date of June 1, 1879, granting the right to divert not to exceed 1.43 cubic feet of water per second of time, from Lodgepole Creek at a

point on the north bank of that stream for the irrigation of certain described land containing about 100 acres in Sections 1 and 12, Township 14 North, Range 52 West of the 6th P.M., in Cheyenne County, Nebraska. The landowner, Carolyn Hostetler, has appealed to this court under the provisions of section 46-229.05, R. R. S. 1943. The sole error assigned is that the department erred in determining that the appropriation had not been put to beneficial use for more than 3 years prior to the notice of hearing. We affirm.

Section 46-229.02, R. R. S. 1943, provides: "If it shall appear that any water appropriation has not been used for some beneficial or useful purpose, or having been so used at one time has ceased to be used for such purpose for more than three years, the department shall appoint a place and time of hearing, and shall serve notice upon the owners of such water appropriation or such ditch, canal or other diverting works to show cause by such time and at such place why the water appropriation owned by such person should not be declared forfeited and annulled because such water appropriation had not been used for more than three years prior to receiving such notice, and shall also serve such notice upon the landowners under such water appropriation, ditch or canal." Section 46-229.04, R. R. S. 1943, provides in part as follows: "At such hearing the verified report of the water commissioner or engineers of the department shall be prima facie evidence for the forfeiture and annulment of such water appropriation."

The landowner appeared at the hearing held on April 5, 1978, and she, her husband who operated the farm of which the 100 acres was a part, and an engineer from the Department of Water Resources testified. Certain documentary evidence was also introduced.

Mrs. Hostetler testified she was the sole owner of

the land in question and had recently acquired the property by inheritance from Myrtle Gunderson. She and her husband had been in possession of the land only a relatively short time, having moved onto it at some unspecified time prior to November of 1977. She testified she had been told by Myrtle Gunderson, during that person's lifetime, that the water rights had been lost "several years before," and that Mrs. Gunderson had attempted to get them back but had been unsuccessful. Mrs. Hostetler stated she did not know when the canal had last been used to irrigate the meadow. She testified the creek itself had been used for watering livestock.

On November 3, 1977, an engineer from the Department of Water Resources visited the farm and he, together with Mr. Hostetler, inspected the site where the diversion dam had been. At that time only remnants of the dam remained, a post or two. Hostetler stated he had been told by "people" that the canal had not been used for 12 years. He had been farming the land himself for about a year and a half.

Mr. Langhofer, the department engineer who inspected the site with Hostetler on November 3, 1977, stated that Hostetler expressed an interest in using the water right for irrigation. The implication of the testimony is that the engineer must have informed Hostetler that there had been, up to that time, no actual cancellation of the appropriation. Langhofer testified that during the 6 years preceding November 3, 1977, he had visited the Gunderson canal about 10 times a year. At no time was there any water in the canal, although there was sufficient flow in the Lodgepole Creek so that diversion could have taken place had there been a diversion dam.

After the engineer's inspection on November 3, 1977, Hostetler, on or about November 15, 1977, constructed a temporary diversion dam. He stated he did this as a test to see if the water would flow into

the canal and "to get the right flow." On that occasion the water flowed into the canal for a distance of about 100 feet. The documentary evidence indicates the canal is a little more than ¾ mile in length. Hostetler did not, in November, put any water on the irrigable land. He did nothing afer that because of a snowstorm.

Mrs. Hostetler argues that the diversion of water into the canal on November 15, 1977, about 3 months before the notice of hearing was served, constituted a beneficial use within the meaning of section 46-229.02, R. R. S. 1943. She also argues that the watering of cattle from the creek constituted a beneficial use for purposes of the appropriation. Her other contention is that good cause was shown for not canceling the appropriation because there was no evidence to show the failure to use was the consequence of her neglect. As she was unaware until the engineer's visit that there had been no cancellation and since she had reasonably assumed there was no existing right, the nonuse was not the result of voluntary neglect on her part.

It is plain the evidence justifies the conclusion that no use had been made of the appropriation for at least 6 years and probably much longer. Did the erection of the temporary diversion dam and the diversion of a small amount of water into the canal about November 15, 1977, constitute a beneficial use within the meaning of the statute? If it was such a beneficial use, does that use defeat the effect of more than 3 years of previous nonuse?

Section 46-229, R. R. S. 1943, provides: "All appropriations for water must be for some beneficial or useful purpose, and when the appropriator or his successor in interest ceases to use it for such purpose the right ceases." Where irrigation water has not been applied to the lands described in the adjudicated appropriation for the statutory period of 3 years, such nonuse, unless excused for some valid

reason, will result in the loss of the right and the State may cancel the appropriation in whole or in part. State v. Birdwood Irrigation District, 154 Neb. 52, 46 N. W. 2d 884.

The parties to this litigation have not called to our attention any authorities from this jurisdiction which have precisely defined beneficial use. However, the clear implication of our holdings in State v. Birdwood Irrigation District, *supra*, and Kersenbrock v. Boyes, 95 Neb. 407, 145 N. W. 837, is that beneficial use requires, in the case of an appropriation for irrigation purposes, actual application of the water to the land for the purpose of irrigation. The courts of most jurisdictions seem to have defined beneficial use as including actual application of water to the land or other beneficial use within the ambit of the appropriation, e.g., power. Arizona v. California, 283 U. S. 423, 51 S. Ct. 522, 75 L. Ed. 1154; Carlsbad Irr. Dist. v. Ford, 46 N. M. 335, 128 P. 2d 1047; McCall v. Porter, 42 Ore. 49, 70 P. 820; Woods v. Sargent, 43 Colo. 268, 95 P. 932; 93 C. J. S., Waters, § 178, p. 928. We hold, therefore, that the diversion of some amount of water into the ditch on or about November 15, 1977, did not constitute a beneficial use within the meaning of sections 46-229 and 46-229.02, R. R. S. 1943.

There is no substance to the contention that the use of the Lodgepole Creek to water cattle was a use within the meaning of the appropriation. It was clearly a beneficial use, but it was a riparian use, not a use pursuant to the appropriation which, by its terms, was for irrigation. We hold that to constitute a beneficial use within the meaning of the appropriation statute, the use must be one described in the appropriation. Kersenbrock v. Boyes, *supra*.

Was beneficial use excused for any reason? Reasons which might excuse beneficial use would appear to include the following: Unavailability of or insufficient water in the stream, State v. Delaware-

Hickman Ditch Co., 114 Neb. 806, 210 N. W. 279; and adequate moisture from natural precipitation so that diversion was unnecessary and would result in waste or violate principles of good husbandry, State v. Delaware-Hickman Ditch Co., *supra*; State v. Birdwood Irrigation District, *supra*; North Loup River P. P. & I. Dist. v. Loup River P. P. Dist., 162 Neb. 22, 74 N. W. 2d 863. The record shows no reason which excused the failure to make beneficial use of the appropriation. Mrs. Hostetler had no right of appropriation independent of that of her predecessor in title. An unexcused nonuse by the appellant's predecessor in title binds the appellant. State v. Nielsen, 163 Neb. 372, 79 N. W. 2d 721.

AFFIRMED.