In re Appropriation A-7603, Water Division 2-A.
Broken Bar Nine Living Trust, appellant,
v. Nebraska Department of Natural
Resources, appellee.

___ N.W.2d ___

Filed August 21, 2015.    No. S-14-906.

1. **Administrative Law: Statutes: Appeal and Error.** In an appeal from
   the Department of Natural Resources, an appellate court's review of the
   director's factual determinations is limited to deciding whether such
   determinations are supported by competent and relevant evidence and
   are not arbitrary, capricious, or unreasonable; however, on questions of
   law, which include the meaning of statutes, a reviewing court is obli-
   gated to reach its conclusions independent of the legal conclusions made
   by the director.
2. **Irrigation: Statutes: Intent: Appeal and Error.** Statutory law on the
   subject of irrigation and the decisions of the appellate courts dealing
   therewith show a clear intention to enforce and maintain a rigid econ-
   omy in the use of the public waters of the state.
3. **Waters: Irrigation: Administrative Law.** Concerning the administra-
   tion of public waters, one purpose of the State is to avoid waste and to
   secure the greatest benefit possible from the waters available for appro-
   priation for irrigation purposes.
4. **Waters.** It is the policy of statutory law to require a continued beneficial
   use of appropriated waters.
5. ____. An appropriator will not be permitted to retain an interest in pub-
   lic waters, to which he has a valid appropriation, which is not put to a
   beneficial use.
6. **Waters: Irrigation: Property: Words and Phrases.** In the context of
   an appropriation for irrigation, beneficial use requires actual application
   of the water to the land for the purpose of irrigation.
7. **Waters: Irrigation: Abandonment.** At common law, an appropriation
   of water for irrigation purposes may be lost by nonuse or abandonment.

8. **Administrative Law: Words and Phrases.** A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.

9. **Words and Phrases.** A capricious decision is one guided by fancy rather than by judgment or settled purpose.

10. **Administrative Law: Words and Phrases.** The term "unreasonable" can be applied to an administrative decision only if the evidence presented leaves no room for differences of opinion among reasonable minds.

Appeal from the Department of Natural Resources. Affirmed.

Jovan W. Lausterer, of Bromm, Lindahl, Freeman-Caddy & Lausterer, for appellant.

Douglas J. Peterson, Attorney General, Justin D. Lavene, and Emily K. Rose for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

MILLER-LERMAN, J.

NATURE OF CASE

Water appropriation A-7603, "Water Division 2-A" (Appropriation), was a surface water right to divert a specified volume of water from the North Loup River to "be used for irrigation purposes only." The Broken Bar Nine Living Trust (Trust), the appellant, held the Appropriation and the lands covered by it. The Nebraska Department of Natural Resources (Department), the appellee, issued a "Notice of Preliminary Determination of Nonuse of [the Appropriation]" to the Trust. After a hearing, the Department concluded that the lands designated under the Appropriation had not been irrigated for more than 5 consecutive years and that the Trust had failed to establish sufficient cause for nonuse under Neb. Rev. Stat. § 46-229.04(4) (Reissue 2010). The Department issued an order canceling the Appropriation in its entirety on September 9, 2014. The Trust appeals. We affirm.

STATEMENT OF FACTS

The parties generally do not dispute the underlying facts of this case. In its "Order of Cancellation" dated September 9, 2014, the Department made the following findings of fact, which are supported by the record:

1. [The Appropriation] is a permit currently shown in the Department's records in the name of the . . . Trust with a priority date of May 27, 1955, to divert 1.15 cubic feet per second (cfs) of water from the North Loup River at points of diversion located in the S½ of Section 10 and the NE¼NE¼ of Section 15, Township 22 North, Range 20 West of the 6th P.M. in Loup County, for irrigation of the following described lands (Exhibit 10):

| Township 22 North, Range 20 West of the 6th P.M. in Loup County | | Acres |
|---|---|---|
| Section 10: | Lot 5 | 24.8 |
| | Lot 6 (E½SW¼) | 32.6 |
| | Lot 7 (SW¼SE¼) | 16.1 |
| Section 15: | NE¼NW¼ | 3.9 |
| | NW¼NE¼ | 33.8 |
| | NE¼NE¼ | 12.5 |
| | SE¼NE¼ | 2.4 |
| | TOTAL | 126.1 |

2. Based upon a verified field investigation report, a Notice of Preliminary Determination was issued on July 26, 2013, in accordance with Neb. Rev. Stat. §§ 46-229.02 and 46-229.03 [(Reissue 2010)] stating that it appeared that all of the water appropriation for irrigation of lands described above had not been used for more than five consecutive years and that the Department knew of no reason that constitutes sufficient cause as provided in . . . § 46-229.04.

3. A contest was filed on August 23, 2013, by [the] legal representative for [the] Trust.

4. Department staff reviewed the contest and on June 12, 2014, filed a motion for hearing.

5. Notice of a hearing was issued on June 26, 2014, and a corrected notice was mailed on July 1, 2014, in accordance with . . . §§ 46-229.02(5) and 46-229.03.

6. A hearing was held in Lincoln, Nebraska, on July 31, 2014, as provided by . . . § 46-229.04.

7. The Department . . . appeared and was represented by its attorney. [A] Department staff member . . . was called as a witness. The Department entered several exhibits, including a verified field investigation report which was entered into evidence as Exhibit 1. The field report indicates that all of the lands included under [the Appropriation] have not been irrigated for more than five consecutive years. [The Department staff member's] testimony showed that there was sufficient water in the North Loup River for [the] Appropriation.

8. [The] attorney . . . for [the] Trust [appeared]. In his opening statement, [the attorney] stated, "I would concur in that I think it's important for the Director and the Department to know that the . . . Trust is not arguing that there was agricultural beneficial use of the [A]ppropriation in question during the relevant five-year time span."

[The Trust] called . . . one of the trustees . . . as a witness. [The trustee's] testimony described the purpose of the [T]rust, which included providing income to support his grandmother during her lifetime. [The trustee] also described the rental agreement the [T]rust had with its tenant, and the poor shape that the existing irrigation equipment was in.

[The Trust] entered several exhibits, including: pictures of the irrigation equipment; lease agreements; an unsigned copy of a trust; and the death certificate of . . . the recipient of the trust.

Under examination and cross examination, [the trustee] marked on Exhibit 9 several areas of land that

are included under [the A]ppropriation . . . and that he knew had been irrigated in the past. His testimony indicated that two of these areas were last irrigated in 1993, and one in 1997 or 1998, and two areas were irrigated approximately eight years ago. He stated that the rest of the lands under the [A]ppropriation had probably not been irrigated. . . .

9. In his opening statement, [the attorney for the Trust] stated that the owners were arguing that they met the exceptions for nonirrigation under . . . § 46-229.04[(4)](a), (b), (c) and (d). In his closing argument, he again reiterated these four subsections and described how the Trust had provided testimony or evidence relating to the four. [The attorney for the Department] also provided his argument in closing relative to the exceptions.

Attached to the original Contest filed by [the Trust] was a document marked Exhibit "A" in which the Trust asserted that Neb. Rev. Stat. § 46-229 [(Reissue 2010)] is legally unenforceable as against the Trust and the property as a three year non-use rule was originally added to the statutory scheme in 1983 and later amended to a five year rule in 2004. The Trust asserts that the use restriction did not exist when the Department issued its [A]ppropriation in 1956 and thus it would be unconstitutional for the Department to retroactively apply this rule against the Trust's vested water right. [The Trust] also entered a copy of this document as part of Exhibit 10.

In its analysis, the Department first determined that Neb. Rev. Stat. § 46-229 (Reissue 2010) is legally enforceable as it relates to the Appropriation. The Department quoted *In re Water Appropriation Nos. 442A, 461, 462, and 485*, 210 Neb. 161, 164, 313 N.W.2d 271, 274 (1981), which case states, "'The [Department of Water Resources] is expressly

authorized by statute, after notice and hearing, to forfeit a water right where it appears that the water appropriation has not been used for some beneficial or useful purpose . . . for more than three years. . . .'" The Department stated that it must follow the statutes. The Trust does not directly challenge this ruling on appeal.

The Department referred to the controlling statutes in its order. Section 46-229.04 provides for the cancellation of an appropriation after 5 consecutive years of nonuse. Section 46-229.04(1) states:

(1) At a hearing held pursuant to section 46-229.03, the verified field investigation report of an employee of the [D]epartment, or such other report or information that is relied upon by the [D]epartment to reach the preliminary determination of nonuse, shall be prima facie evidence for the forfeiture and annulment of such water appropriation. If no person appears at the hearing, such water appropriation or unused part thereof shall be declared forfeited and annulled. If an interested person appears and contests the same, the [D]epartment shall hear evidence, and if it appears that such water has not been put to a beneficial use or has ceased to be used for such purpose for more than five consecutive years, the same shall be declared canceled and annulled unless the [D]epartment finds that (a) there has been sufficient cause for such nonuse as provided for in subsection (2), (3), or (4) of this section or (b) subsection (5) or (6) of this section applies.

Section 46-229.04(2) generally provides that sufficient cause for nonuse shall exist for up to 30 consecutive years if such nonuse was caused by the unavailability of water. And § 46-229.04(3) generally provides that sufficient cause for nonuse shall exist as a result of inadequate supply or storage issues. Subsections (2) and (3) of § 46-229.04 are not implicated in the present case.

Section 46-229.04(4) provides:

(4) Sufficient cause for nonuse shall be deemed to exist for up to fifteen consecutive years if such nonuse was a result of one or more of the following:

(a) Federal, state, or local laws, rules, or regulations temporarily prevented or restricted such use;

(b) Use of the water was unnecessary because of climatic conditions;

(c) Circumstances were such that a prudent person, following the principles of good husbandry, would not have been expected to use the water;

(d) The works, diversions, or other facilities essential to use the water were destroyed by a cause not within the control of the owner of the appropriation and good faith efforts to repair or replace the works, diversions, or facilities have been and are being made;

(e) The owner of the appropriation was in active involuntary service in the armed forces of the United States or was in active voluntary service during a time of crisis;

(f) Legal proceedings prevented or restricted use of the water; or

(g) The land subject to the appropriation is under an acreage reserve program or production quota or is otherwise withdrawn from use as required for participation in any federal or state program or such land previously was under such a program but currently is not under such a program and there have been not more than five consecutive years of nonuse on that land since that land was last under that program.

The [D]epartment may specify by rule and regulation other circumstances that shall be deemed to constitute sufficient cause for nonuse for up to fifteen years.

Subsection (5) of § 46-229.04 applies to appropriations held by an irrigation district, et cetera; subsection (6) applies to temporary appropriations; and subsection (7) applies to issues

involving underground storage. These three subsections are not involved in this case.

The Department concluded that "the verified field investigation report information is correct, and that the land under [the Appropriation] has not been irrigated from the North Loup River for more than five consecutive years." The Department noted that two fields of the land at issue were last irrigated 8 years before and that thus, they had been irrigated in the past 15 years. The Department further stated that the rest of the land under the Appropriation had not been irrigated for more than 15 years.

The Department determined that there was no evidence to show that the excusable reasons provided in § 46-229.04(2) or (3) were applicable in this case for the land that had not been irrigated for more than 15 years. Therefore, the Department stated that the "part of the [A]ppropriation attached to lands not irrigated for more than 15 years should be cancelled as provided by . . . § 46-229.04."

With respect to the two tracts of land that had been irrigated in the past 8 years, the Department determined that none of the excusable reasons for nonuse provided in § 46-229.04(4)(a), (b), (c), or (d) were established in this case. The Department stated:

> In general, it appears that the reason for nonuse was that the Trustees chose to lease the property to an individual that wanted to raise cattle and did not want to irrigate due to age, difficulty of irrigation, lack of good equipment, and the tenant's intended use of the land.

Based on its determinations, the Department ordered that the Appropriation be canceled.

The Trust appeals.

## ASSIGNMENTS OF ERROR

Restated, the assignments of error which the Trust has both assigned and argued are as follows: (1) The Department's finding that the Appropriation should be canceled is arbitrary,

capricious, or unreasonable, and (2) the Department erred when it determined that the Appropriation should be canceled because it failed to find sufficient cause for the Trust's nonuse as provided by § 46-229.04(4)(a) to (d).

## STANDARD OF REVIEW

[1] In an appeal from the Department, an appellate court's review of the director's factual determinations is limited to deciding whether such determinations are supported by competent and relevant evidence and are not arbitrary, capricious, or unreasonable; however, on questions of law, which include the meaning of statutes, a reviewing court is obligated to reach its conclusions independent of the legal conclusions made by the director. *In re 2007 Appropriations of Niobrara River Waters*, 288 Neb. 497, 851 N.W.2d 640 (2014).

## ANALYSIS

*Summary of Relevant Nebraska*
*Surface Water Law.*

At issue in this case is the Appropriation which authorized the Trust to divert up to a specified volume of water from the North Loup River to "be used for irrigation purposes only" using "the least amount of water necessary for the production of crops in the exercise of good husbandry." Before addressing the specific issues in this appeal, we set forth some general principles regarding Nebraska surface water law applicable to this case.

[2,3] The Nebraska Constitution declares the necessity of water for domestic use and for irrigation purposes in this state to be a natural want. Neb. Const. art. XV, § 4. The inadequacy of supply to meet the demands of the public requires strict administration to prevent waste. *State, ex rel. Cary, v. Cochran*, 138 Neb. 163, 292 N.W. 239 (1940). We have observed:

> Our statutory law on the subject of irrigation and the decisions of this court dealing therewith show a clear

> intention to enforce and maintain a rigid economy in the use of the public waters of the state. It is the policy of the law in all the arid states to compel an economical use of the waters of natural streams. One of the very purposes of the State in the administration of public waters is to avoid waste and to secure the greatest benefit possible from the waters available for appropriation for irrigation purposes. *Farmers Canal Co. v. Frank*, 72 Neb. 136, 100 N.W. 286 [(1904)].

*State v. Birdwood Irrigation District*, 154 Neb. 52, 55, 46 N.W.2d 884, 887 (1951).

[4,5] This case involves an appropriation of surface water for irrigation. An appropriation right is a right to divert unappropriated surface water for beneficial use. Neb. Rev. Stat. § 46-204 (Reissue 2010); *In re 2007 Appropriations of Niobrara River Waters*, 278 Neb. 137, 768 N.W.2d 420 (2009). It is "[t]he policy of the law . . . to require a continued beneficial use of appropriated waters . . . ." *State v. Birdwood Irrigation District*, 154 Neb. at 57, 46 N.W.2d at 888. We have stated "[a]n appropriator will not be permitted to retain an interest in public waters, to which he has a valid appropriation, which [is] not put to a beneficial use." *Id.* at 58, 46 N.W.2d at 889.

[6] In the context of an appropriation for irrigation, we have ruled that beneficial use requires "actual application of the water to the land for the purpose of irrigation." *Hostetler v. State*, 203 Neb. 776, 781, 280 N.W.2d 75, 78 (1979). Appropriators who fail to comply with the beneficial use requirement are subject to cancellation of their rights to use the water by the Department pursuant to proceedings brought under § 46-229 and Neb. Rev. Stat. §§ 46-229.02 to 46-229.05 (Reissue 2010).

*Appropriation Statutes.*

The framework for our consideration of this appeal is found in chapter 46 of the Nebraska Revised Statutes pertaining to

"Irrigation and Regulation of Water." In particular, we apply §§ 46-229 and 46-229.02 to 46-229.05 which generally cover the procedural and substantive law pursuant to which an appropriation may be canceled.

Section 46-229 provides:

> All appropriations for water must be for a beneficial or useful purpose and . . . when the owner of an appropriation or his or her successor in interest ceases to use it for such purpose for more than five consecutive years, the right may be terminated only by the director [of the Department] pursuant to sections 46-229.02 to 46-229.05.

Sections 46-229.02 and 46-229.03 generally address the procedural aspects of cancellation and provide the following: the procedure by which the Department makes a preliminary determination of nonuse, notice of the preliminary determination of nonuse to the owner of the appropriation, the manner by which the owner can contest the preliminary determination, and the format of the hearing at which the decision whether an appropriation should be canceled is made.

Section 46-229.04, considered in detail below, provides the substantive principles to be applied to resolve the issue of whether the appropriation should be canceled, in whole or in part, for nonuse, and § 46-229.05 provides for an appeal in accordance with Neb. Rev. Stat. § 61-207 (Reissue 2009).

Regarding § 46-229.04(1), we note that this subsection provides that at the hearing, the verified field investigation report preliminarily concluding that there has been nonuse "shall be prima facie evidence for the forfeiture and annulment" of the appropriation. If an interested person appears, the Department shall hear evidence, and

> if it appears that such water has not been put to a beneficial use or has ceased to be used for such purpose for more than five consecutive years, the same shall be declared canceled and annulled unless the [D]epartment finds that (a) there has been sufficient cause for such

nonuse as provided for in subsection (2), (3), or (4) of this section or (b) subsection (5) or (6) of this section applies.

As noted above, § 46-229.04(2) generally provides that sufficient cause for nonuse shall exist for up to 30 consecutive years if such nonuse was caused by the unavailability of water. And § 46-229.04(3) generally provides that sufficient cause for nonuse shall exist as a result of inadequate supply or storage issues. Subsections (2) and (3) of § 46-229.04 are not implicated in the present case.

The provisions of § 46-229.04(4)(a) to (d) are at the center of the Trust's appeal, and we set them forth again here:

(4) Sufficient cause for nonuse shall be deemed to exist for up to fifteen consecutive years if such nonuse was a result of one or more of the following:

(a) Federal, state, or local laws, rules, or regulations temporarily prevented or restricted such use;

(b) Use of the water was unnecessary because of climatic conditions;

(c) Circumstances were such that a prudent person, following the principles of good husbandry, would not have been expected to use the water;

(d) The works, diversions, or other facilities essential to use the water were destroyed by a cause not within the control of the owner of the appropriation and good faith efforts to repair or replace the works, diversions, or facilities have been and are being made.

*Arbitrary, Capricious,*
*or Unreasonable.*

As we understand it, the Trust is generally challenging the scheme by which an appropriation once conferred can be canceled. That is, the Trust claims that the act of cancellation is arbitrary, capricious, or unreasonable. We find no merit to this claim.

[7] To the extent the Trust contends that once an application for an appropriation has been approved, the appropriation

cannot be constitutionally canceled, we reject this argument. We have observed that at common law, an appropriation of water for irrigation purposes may be lost by nonuse or abandonment. *State v. Birdwood Irrigation District*, 154 Neb. 52, 46 N.W.2d 884 (1951). Furthermore, our jurisprudence generally provides that after an appropriation is granted, under the Nebraska Constitution and the police powers of the State, the Department, after notice and hearing, continues to regulate the use of waters of natural rivers and streams. E.g., *State, ex rel. Cary, v. Cochran*, 138 Neb. 163, 292 N.W. 239 (1940). Specifically, as relevant to this case, the constitutionality of statutes regarding forfeiture of water rights has long been "settled in this state." See *In re Water Appropriation Nos. 442A, 461, 462, and 485*, 210 Neb. 161, 165, 313 N.W.2d 271, 274 (1981). See, also, *State v. Birdwood Irrigation District, supra*; *Dawson County Irrigation Co. v. McMullen*, 120 Neb. 245, 231 N.W. 840 (1930); *Kersenbrock v. Boyes*, 95 Neb. 407, 145 N.W. 837 (1914). We believe the rationale of these cases based on the necessity for the rigid administration of a scarce resource (referred to above in our summary of Nebraska surface water law) remains valid, and we have not been provided a reason to overrule these cases.

[8-10] To the extent the Trust contends that the Department's processing of this case and its decision are arbitrary, capricious, or unreasonable, we also reject this argument. We addressed such a challenge in *In re Water Appropriation A-4924*, 267 Neb. 430, 434, 674 N.W.2d 788, 791 (2004), wherein we stated:

> In an appeal from the Department, an appellate court's review of the director's factual determinations is limited to deciding whether such determinations are supported by competent and relevant evidence and are not arbitrary, capricious, or unreasonable. *City of Lincoln v. Central Platte NRD*, 263 Neb. 141, 638 N.W.2d 839 (2002). A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which

would lead a reasonable person to the same conclusion. *Bethesda Found. v. Buffalo Cty. Bd. of Equal.*, 263 Neb. 454, 640 N.W.2d 398 (2002). A capricious decision is one guided by fancy rather than by judgment or settled purpose. *In re Application of Neb. Pub. Serv. Comm.*, 260 Neb. 780, 619 N.W.2d 809 (2000). The term "unreasonable" can be applied to an administrative decision only if the evidence presented leaves no room for differences of opinion among reasonable minds. *Pittman v. Sarpy Cty. Bd. of Equal.*, 258 Neb. 390, 603 N.W.2d 447 (1999).

The record in this case shows that the field investigation report by a Department staff member was introduced at the hearing as evidence that the Appropriation should be canceled. Section 46-229.04(1) provides that "the verified field investigation report of an employee of the [D]epartment . . . shall be prima facie evidence for the forfeiture and annulment of such water appropriation." Under the scheme set out in § 46-229.04(1), the burden then shifts to an interested party to present evidence to the Department that the Appropriation has been put to a beneficial use during the prior 5 consecutive years or that a recognized excuse for nonuse exists.

We have recognized the burden-shifting analysis described above in our cases. In *In re Water Appropriation A-4924, supra*, we noted that the Department bore the burden to establish nonuse for the statutory period and that this fact could be established by the verified report of the Department. Once the report has been presented, then the appropriator must show cause why the appropriation should not be terminated. That is, the language of the statute clearly indicates that the burden is upon the appropriator to present evidence showing either that water was taken, contrary to the report filed by the Department, or that some excuse existed for nonuse.

In this case, the Trust did not contend that the water had been put to a beneficial use for irrigation during the prior 5 consecutive years. Once it had been established that the

Appropriation had not been used for more than 5 consecutive years, it was the burden of the interested party, in this case the Trust, to present evidence that there was sufficient cause for nonuse. See § 46-229.04(1). The procedure followed by the Department was not arbitrary, capricious, or unreasonable. And as we explain below, the decision itself was supported by competent and relevant evidence and was not arbitrary, capricious, or unreasonable.

*Evidence Regarding Excuse for Nonuse:*
*§ 46-229.04(4)(a) to (d).*

The Trust contends that its evidence established sufficient cause for nonuse under § 46-229.04(4)(a) to (d) and claims the Department erred when it did not so find. The record and applicable law do not support the Trust's contentions, and as such, the decision to cancel the Appropriation was not arbitrary, capricious, or unreasonable.

Section 46-229.04(4)(a) generally excuses nonuse where an appropriator is temporarily prevented from using its appropriation by federal, state, or local laws, rules, or regulations. The Trust refers us to the Uniform Trust Code in general and contends that its decision to provide income to the trust beneficiary and its decision to lease the land to its tenant prevented it from using Trust funds for repairing irrigation equipment, growing crops, and ultimately using the Appropriation. The Department found that these decisions were choices made by the Trust, but not impediments as contemplated by § 46-229.04(4)(a). We agree with the Department.

We recognize that administration of the Trust required adherence to good faith, see Neb. Rev. Stat. § 30-3866 (Reissue 2008), and prudence, see Neb. Rev. Stat. §§ 30-3869 and 30-3884 (Reissue 2008), for the benefit of the beneficiary, but the Trust has not explained how these obligations prevented it from making land lease choices which would have used and preserved its Appropriation asset. In particular, the 2008 lease between the Trust and its tenant refers

to the cattle operation to be run by the tenant on the lands associated with the Appropriation; that is, the Trust chose to enter into a lease which had the tendency to underutilize the Appropriation which had been granted for the "production of crops." The Trust did not establish it was prevented from using the Appropriation under trust principles and did not show sufficient cause for nonuse under § 46-229.04(4)(a).

Section 46-229.04(4)(b) generally excuses nonuse where an appropriator's nonuse is explained by the weather. That is, "[u]se of the water was unnecessary because of climatic conditions." The Department found the evidence established, inter alia, that 2012 was a "drought year," thus establishing the necessity for use for irrigation in 2012 and a circumstance contrary to legitimate nonuse. The evidence included precipitation tables and testimony. The Trust offered no evidence to show that it either used its Appropriation in 2012 or had sufficient cause for its failure to use its Appropriation in the drought year, 2012. The Department did not err when it determined that the Trust did not establish sufficient cause for nonuse under § 46-229.04(4)(b).

Section 46-229.04(4)(c) generally excuses nonuse where an appropriator, following the principles of good husbandry, would not have been expected to use the water. The Department correctly rejected the Trust's claim under this subsection. The Trust notes that "husbandry" is not defined in the statute, and the Trust contends that the word "husbandry" should be read to include using the land and water for cattle. Black's Law Dictionary defines "husbandry," in part, as "[a]griculture or farming; cultivation of the soil for food." Black's Law Dictionary 859 (10th ed. 2014). Although we do not necessarily endorse the Trust's reading of "husbandry" as including cattle operations, the more fundamental reason we reject the Trust's interpretation of the statute is that its construction of § 46-229.04(4)(c) is not a sensible one. See *Walton v. Patil*, 279 Neb. 974, 983, 783 N.W.2d 438, 445-46 (2010) (stating that "in construing a statute, appellate courts are guided by

the presumption that the Legislature intended a sensible rather than absurd result in enacting the statute").

The Trust asserts that properly running a cattle operation invariably underutilizes an appropriation. The Trust refers us to the record which shows that the tenant used the property and minimal water in a cow-calf operation; the Trust asserts that in doing so, it followed the principles of good husbandry, thus excusing nonuse. We reject the Trust's argument.

It is fundamental under §§ 46-229 and 46-229.04 that the appropriation for water must be put to a beneficial use and that if it has ceased to be so used for more than 5 consecutive years, the appropriation is at risk of cancellation. As relevant to this case, we have stated that "beneficial use requires, in the case of an appropriation for irrigation purposes, actual application of the water to the land for the purpose of irrigation." *Hostetler v. State*, 203 Neb. 776, 781, 280 N.W.2d 75, 78 (1979).

We have previously rejected an argument similar to that proffered by the Trust. In *Hostetler, supra*, we rejected the contention that the use of creek water subject to an appropriation for irrigation to water cattle was a use within the meaning of the appropriation. It would be an illogical reading of § 46-229.04(4)(c) to construe the statute in a manner which would endorse an outcome antithetical to the strict administration of the surface water of this state. See *State, ex rel. Cary, v. Cochran*, 138 Neb. 163, 292 N.W. 239 (1940). The interpretation urged upon us by the Trust illustrates the point.

We reject the Trust's statutory construction which would effectively have us endorse a nonpermitted use of some amount of water as an excuse for nonuse of the one described in the appropriation. We do not agree with the Trust's reading of § 46-229.04(4)(c) and conclude that the Department did not err when it determined that the Trust did not establish sufficient cause for nonuse under § 46-229.04(4)(c).

Section 46-229.04(4)(d) generally excuses nonuse where the works or equipment essential to use the water were destroyed

by a cause not within the control of the appropriator and good faith efforts to repair "have been and are being made." As the Department correctly found, the evidence upon which the Trust relies is insufficient.

The Trust refers us to evidence that a "Vermeer boom" was destroyed in a windstorm "prior to 2000" and that it obtained quotes for the costs of replacing the nonfunctioning irrigation equipment. Nothing in the record suggests meaningful good faith efforts were made to repair such equipment after 2000, and the quotes to which the Trust refers were obtained after the Department issued its "Preliminary Determination of Nonuse," and there is no evidence that repairs have been pursued. In an earlier case, we found unpersuasive the "diversion of some amount of water" only after the Department's inspection showed nonuse for the statutory period. See *Hostetler v. State*, 203 Neb. at 781, 280 N.W.2d at 78. Similarly, we agree with the Department that obtaining a quote without more only after the "Preliminary Determination of Nonuse" was issued did not establish good faith efforts at repair or sufficient cause for nonuse under § 46-229.04(4)(d).

## CONCLUSION

For the reasons explained above, we determine the Trust failed to establish sufficient cause to excuse its nonuse of the Appropriation and we therefore affirm the Department's "Order of Cancellation."

Affirmed.

Stephan, J., not participating.